ALBANY,
January, 1823.

LION
v.
BURTISS.

---

LION, *ex dem.* MEDCEF EDEN, *against* BURTISS and THE PRESIDENT AND DIRECTORS OF THE BANK OF NEW-YORK.

THIS was an action of ejectment, brought in *May,* 1819, to recover the possession of a house and lot in the city of *New-York.* The cause was tried before Mr. Justice *Van Ness,* at the *New-York* sittings, *December* 2d, 1820. The declaration contained three demises : from *Medcef Eden,* from *John Wood,* junior, assignee of *M. Eden,* and from *M. E.* and *J. W.,* his assignee, in all of which the ha-

E. died in
September,
1798, having,
by his last
will, dated
August 29,
1798, devised
lands to his
son Joseph, in
fee ; and other
lands to his
son Medcef, in
fee ; and add-

ed, " It is my will, and I do so order and appoint, that if either of my said sons should depart this life, without lawful issue, his share or part shall go to the survivor; and, in case of both their deaths, without lawful issue, then I give all the property, &c. to my brother, *John E.,* of, &c., and sister, *Hannah J.,* of, &c., and their heirs." *Joseph,* one of the sons, died in *August,* 1812, without lawful issue, leaving his brother *M.* surviving, who, afterwards, died, on the 26th of *July,* 1819, without lawful issue : Held, that on the death of the testator's son, *Joseph,* the limitation over, which was good as an executory devise, vested in *M.,* the surviving son ; and the devise in his favour having taken effect, ceased to be executory, and he became seised in fee tail, by necessary implication of law, with a remainder expectant in favour of *John E.* and *H. J.,* the brother and sister of the testator ; and by virtue of the statute of the 23d of *February,* 1786, abolishing estates tail, *M.* became seised, in fee simple, absolute, of all the estate devised to his brother *Joseph.*

A person holding land by *deforcement* merely, cannot levy a fine so as to affect or bar a stranger to it.

*bendum* was stated to be from the 6th of *May*, 1819. The *ouster*, in all the demises, was laid on the 8th of *May*, 1819, on which day the action was commenced, by a service of the declaration on the tenant. The defendants confessed lease, entry, and ouster, and that they were in possession at the commencement of the suit.

It was proved, that *Medcef Eden*, the elder, died seised of the premises in question, on the 14th of *September*, 1798, having made his last will, in due form of law, to convey real estate, dated *August* 29, 1798, leaving two sons, *Joseph* and *Medcef*. The will, among other things, contained the following clauses : " I give, &c. unto my son *Joseph*, my three houses, &c., in *Gold-street*, &c. ; also, five houses and lots, &c. in *Riders-street*, &c. ; also, one house and lot in *Broadway*, &c. next to the corner of *Robinson-street*, &c. ; also, my farm, &c. near *Kingsbridge* ; also, one other farm in the *Manor of Fordham*, &c. ; also, twelve acres of land, &c., at *Bloomingdale*, &c. ; also, five houses and six lots of ground, &c. situate in *Bayard's-lane*, of the seventh ward of the said city, (which included the premises in question;) also, a house and lot, &c. in *Greenwich-road*, &c. ; also, a house and lot, &c. in *Nassau-street*, &c. ; to have and to hold, &c. all and singular, &c. the hereby bequeathed premises, unto the sole and proper use and behoof of my said son *Joseph*, his heirs, &c. for ever."

" And I give, &c., to my son *Medcef*, all and singular my farm, &c., at *Bloomingdale*, on the north side of the road, &c. ; also, ten acres on the south side of the road, &c. ; also, the house and lot in the *Bowery-road*, &c. ; also, one house and lot in *Broadway*, now occupied by *B. Judah* ; also, two houses and lots, &c. at the *Old-slip*, &c. ; (describing other houses and lots in the city,) to have and to hold, &c., unto the only proper use, &c. of my said son *Medcef*, his heirs and assigns, for ever," &c.

" *Item.* It is my will, *and I do order and appoint, that if either of my said sons should depart this life, without lawful issue, his share or part shall go to the survivor ; and in case of both of their deaths, without lawful issue, then I give all the property aforesaid, to my brother, John Eden, of Loftus, in Cleveland, in Yorkshire ; and my sister, Hannah Johnson, of Whitby, in Yorkshire, and their heirs.*"

On the death of the testator, *Joseph* entered into possession of the premises in question, as part of the lands devised to him, situate in *Bayard's-lane*, &c. Afterwards, on the 16th of *May*, 1801, all the right and title of *Joseph Eden* to the premises in question, were sold at public auction by the Sheriff of *New-York*, by virtue of a *fi. fa.*, issued on a judgment in the Supreme Court, to *Robert Bowne*, the highest bidder, who purchased the same for the use of the *Bank of New-York*; and the Sheriff, accordingly, executed a deed to *R. Bowne*, who entered and was possessed of the premises, in trust; and on the 23d of *February*, 1815, conveyed the premises to the *Bank of New-York*, who entered into possession thereof, under the deed to them, and have since been in possession.

*Joseph Eden* died on the 29th of *August*, 1812, without issue, leaving *Medcef Eden*, surviving him.

On the 16th of *April*, 1816, the *Bank of New-York* duly executed and delivered a deed of bargain and sale, in fee simple, of the premises, to *C. B. Goelet*, in order to make him a tenant to the *præcipe*, for the purpose of levying a *fine*, which was accordingly levied and completed, in due form, in *January* term, 1817. The writ of covenant was tested the 13th of *January*, 1816. The first proclamation was made in *May* term, 1816, and the last proclamation in *January* term, 1817.

The records, papers, and proceedings, relating to the levying the fine, were read in evidence. The plaintiff's counsel insisted, that the fine was null and void, because the parties thereto had no estate in the premises, at the time, but, according to their own showing, were mere tenants at sufferance of the lessors of the plaintiff, &c. The Judge, without giving any opinion, reserved the point.

The defendants offered to show, that *Medcef Eden*, the younger, had died since the commencement of the suit, to wit, on the 26th of *July*, 1819, without issue. The plaintiff objected to the testimony, but it was admitted by the Judge, and the plaintiff excepted to his opinion.

The plaintiff, then, proved an entry on the premises by *E. Baldwin*, by virtue of a letter of attorney, to him from

ALBANY,
January, 1823.

LION
v.
BURTISS.

*Medcef Eden*, for that purpose, on the 6th of *May*, 1819, and that he there executed the lease mentioned in the declaration. The plaintiff then gave in evidence the will of *Medcef Eden*, the younger, dated *July* 23, 1819, whereby he devised all his real and personal estate to his wife, for life, &c., who was living.

Both parties excepted to the opinion of the Judge, on every point raised at the trial, and decided against them, with liberty to bring up the points before the Court, to be argued, on a case to be made.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the Court, on a case to be made, with liberty to either party to turn it into a special verdict, or bill of exceptions, or both, at the election of either party ; all papers and other documents, produced on the trial, to be part of the case.

*Burr*, for the plaintiff.

*S. Jones*, for the defendants.

SPENCER, Ch. J. delivered the opinion of the Court. This case arises under the will of *Medcef Eden*, the elder. In the case of *Anderson* v. *Jackson*, (16 *Johns. Rep.* 382.) this will received a construction in the Court for the Trial of Impeachments and the Correction of Errors. The judgment of the Supreme Court was affirmed. It was decided, that *Medcef Eden*, the younger, on the death of his brother *Joseph*, without issue, took by way of executory devise, the lands devised to *Joseph*. This action is for the recovery of part of the real estate thus devised to *Joseph Eden*. The suit was commenced in *May*, 1819 ; and on the 26th of *July* thereafter, *Medcef Eden*, the younger, died without issue ; and the question between these parties is, whether the whole estate became vested in *Medcef Eden*, or whether the limitation over to *John Eden*, and *Hannah Johnson*, upon the events which have happened, vests the real estate devised to *Joseph Eden* in them.

The case states, that *Medcef Eden*, the elder, made his will in due form, and competent to pass real estate, on the 29th

of *August*, 1798, whereby he devised to his son *Joseph* certain real estate, including the premises in question, and to his heirs and assigns for ever. After devising other real estate to his son *Medcef*, also in fee, there is the following clause in his will : " *Item.* It is my will, and I do so order and appoint, that if either of my said sons should depart this life, without lawful issue, his share or part shall go to the survivor ; and in case of both their deaths, without lawful issue, then I give all the property aforesaid to my brother, *John Eden*, of *Loftus*, in *Cleveland*, in *Yorkshire*, and my sister, *Hannah Johnson*, of *Whitby*, in *Yorkshire*, and their heirs."

In the case of *Anderson* v. *Jackson*, it was decided, that the devise to *Joseph Eden* did not create an estate tail, but that the devise over upon the event of his dying without issue, was a limitation over, as an executory devise, to *Medcef*, the survivor. The opinion of the Court was, that the devise over to the survivor did not depend on an indefinite failure of issue, but only on the failure of issue at the time of *Joseph's* death. This, then, is the law of the land, and must govern every other case coming within the same principle. I must be allowed to say, that subsequent reflection has confirmed my conviction of the soundness of the decision of the Court of Errors. *Stare decisis*, is a maxim essential to the security of property ; the decisions of Courts of law become a rule for the regulation of the alienation and descent of real estate, and where that rule has been sanctioned and adopted in our Courts, it ought to be adhered to, unless it be manifestly wrong and unjust. We have, fortunately, little experience with regard to estates tail. It is a tenure opposed to the genius of our institutions ; and in the year 1782, during our revolutionary struggle, the legislature evinced its entire hostility to a form of conveyance which had a tendency to obstruct the free alienation of real property.

The will under consideration was made subsequent to the acts of the twelfth of *July*, 1782, and of the twenty-third of *February*, 1786 ; both of which statutes converted not only existing, but future estates in fee tail, into fee simple absolute. These statutes formed an important epoch in our his-

tory. They broke into pieces the shackles which had been ingeniously contrived to perpetuate estates in the same family, and thus rendered the alienation of the soil free and unrestrained. It will be perceived, that the devisor, in this case, made use of no words denoting an intention to devise *in fee tail* the estate given to his son *Joseph*, and it was urged that it was a fee tail only by implication of law : but it seems to me, that since our statutes, any expression denoting an intention to limit the failure of issue to a life in being, such as the word "survivor" in this case, is, with us, sufficient to repel the implication, that a limitation of an estate over, in the event of the first devisee's dying without issue, was meant to be an estate in fee tail, and thus defeat the real intention of the devisor ; but, on the contrary, it appears to me that no such intent ought to be implied, if there be any other method of effectuating the real intention of the testator. I cannot bring myself to doubt, that when the testator in this case declared it his will, that if either of his sons departed this life without lawful issue, his part or share should go to the survivor, he meant and intended, what is perfectly intelligible, the lawful issue, living at the time of the death of the son who first died ; and this construction is evident, from the consideration, that the surviving son was to inherit the part devised to the son who should first die without lawful issue ; thus clearly denoting an intention that the surviving son should personally be benefited, by enjoying the estate which his brother had left, without issue to inherit it. The case of *Smith and Wife* v. *Chapman*, (1 *Hen. & Mun.* 303. 306.) contains principles in accordance with the doctrine I have advanced ; but it is not my purpose to enlarge upon this point. The law is settled, and I think well and justly. The limitation over to the brother and sister of the testator omits the word *survivor*, which was considered very significant and important in showing the intent of the testator, when he gave the estate to the surviving son, in case the other died without lawful issue ; but it is urged by the defendant, that as the whole is in one sentence, and the devise over to persons *in esse*, the same common intent is applicable to the limitation over to the brother and sister of the devisor, if both his sons died without issue, and that the same

consequence would follow. But as there are other principles which apply to the last devise, it is unnecessary to decide this point.

The question then arises, whether, upon the event which has happened, the death of the testator's sons without issue, his brother and sister can take under the devise, as an executory one. In 2 *Saund.* 388 *h.* Serjeant *Williams*, in a note, says, " with regard to executory devises, it is a rule, that wherever one limitation of a devise is taken to be executory, all subsequent limitations must likewise be so taken ;" but he adds, " however, it seems to be established, that wherever the first limitation vests in *possession*, those that follow vest in interest at the same time, and cease to be executory, and become mere vested remainders, subject to all the incidents of remainders." He refers to *Stephens* v. *Stephens, Cas. temp. Talbot,* 228. *Hopkins* v. *Hopkins,* 1 *Atk.* 581. and *Doe* v. *Fonnereau, Doug.* 479. *Cruise,* (vol. 6. 517. tit. 38. ch. 20. s. 26—28.) and *Fearne,* (411. 419, 420. 6 *Ed.* 526.) concur in this opinion ; and the adjudged cases fully support the rule, as laid down by these learned commentators. The case of *Brownsword* v. *Edwards,* (2 *Ves. sen.* 243.) contains the same doctrine. The estate, then, of *John Eden* and *Hannah Johnson,* was turned into a remainder, when the executory devise took effect in favour of *Medcef Eden.* The devise to them then ceasing to be executory, *Medcef* became seised in fee tail by necessary implication of law, with a remainder expectant in favour of *John Eden* and *Hannah Johnson.* For it never was doubted, in the argument of the case of *Anderson* v. *Jackson,* that if the limitation over to the surviving son of the testator, in the event of one of them dying without lawful issue, did not operate as an executory devise, it would necessarily be a fee tail ; and therefore it follows, inevitably, that wherever the executory devise ceased and could no further operate, the estate in possession became a fee tail, and the subsequent remainder became, by operation of law, limited on a fee tail ; consequently, if our statute abolishing estates in fee tail had not passed, this remainder might have been destroyed by a fine or recovery by *Medcef Eden.* (5 *Cruise,* 471. 6 *Cruise.* 523.)

The statute (1 *N. R. L.* 52.) enacts, " That in all cases,

when any person, or persons, would, if the said act, (the act of the 12th of *July*, 1782,) and this present act had not been passed, at any time hereafter, become seised in fee tail of any lands, tenements, or hereditaments, by virtue of any devise, gift, grant,. or other conveyance, heretofore made, or hereafter to be made, or by any means whatsoever, such person or persons, instead of becoming seised thereof in fee tail, shall be deemed and adjudged to become seised thereof in fee simple absolute." This statute was passed in 1786, and the will was made in 1798, and thus *Medcef Eden* became the absolute and unqualified owner in fee simple, of all the real estate devised to *Joseph*.

The second question in this case is, whether the fine is a bar to the recovery. It is a settled principle, that if a person who is possessed of land for a term of years only, or is a tenant at will, or who has an estate less than a freehold, levies a fine, it will not affect strangers. (5 *Cruise*, 87. s. 20, 21.) A stranger to a fine has a right to aver *quod partes finis nil habuerunt*. The statute (1 *N. R. L.* 361.) gives to such as are not parties or privies to the fine, a right to except, and to avoid the fine, if those who were parties to it, or any person to their use, had nothing in the lands and tenements comprised in the fine.

It appears in this case, that the Sheriff of *New-York* sold the premises in question, with other lands, to *Robert Bowne*, on the 16th of *May*, 1801, under a judgment in favour of *John Wardell* against *Joseph Eden*. On the 23d of *February*, 1815, *Robert Bowne* and his wife conveyed the premises thus purchased to the *Bank of New-York;* the deed recites the Sheriff's sale to him, and that the consideration mentioned in the Sheriff's deed, were the proper monies of the bank, and paid by them, and that his name was used only in trust. The deed from the bank to *Goelet*, on which the fine was levied, is a deed of bargain and sale; the writ of covenant is tested the 13th of *January*, 1816, and the fourth and last proclamation was made in *January*, 1817. The case states, that *Joseph Eden* died on the 29th of *August*, 1812. Thus it appears, that the title of the bank terminated on the death of *Joseph Eden*, and the right to the premises had become vested in *Medcef Eden* long before the fine was levied.

The bank having succeeded to the right of *Joseph Eden*, which was co-extensive only with his estate, on his death, they had no other estate than that of mere possession. They entered into possession rightfully, under the title derived by *Joseph* from the will of his father, but the event having happened by which his estate was defeated, the bank had no other interest than that of naked possessors. In *Coke* 9. 106 *a*. 5 *Rep*. 123 *b*. and 2 *Inst*. 517. the rule is thus laid down, that no fine levied with proclamations, shall bind any but those who are put out of possession, and have but a right; for if their estate or interest be not devested out of them, but remains in them, as it was *ab initio*, they need not make a claim or entry to that which was never devested.—— The continuance of the bank in possession after the death of *Joseph Eden* was not a disseisin, but a mere deforcement, which is defined to be, the holding of any lands or tenements, to which another person hath right. And it is distinguished from abatement, intrusion, disseisin, or a discontinuance, in this, that it is only such a detainer of the freehold from him that hath the right of property, but never had any possession under that right, as falls within none of the injuries which belong to the other classes. (3 *Black. Com.* 172, 173.) I am, therefore, of opinion, that the bank, who were cognizors, had no estate in the premises enabling them to levy the fine, and that, consequently, no entry was necessary to avoid its effects. In this case, however, there was the necessary entry within five years, given by the statute, after the last proclamation. All that is necessary is, that there be an entry within the five years, *animo clamandi*. (*Cruise's Dig*. tit. 35. ch. 14. p. 237. s. 46, 47, 48, 49.) And here it appears, that *Medcef Eden*, on the 30th *April*, 1819, gave a power of attorney to *Baldwin*, authorizing him, in his name, to enter and take possession of that part of the real estate of his father which was devised to his brother *Joseph*, and to execute leases in his name; declaring in the power his sole meaning to be, to enable him to institute suits for the trial of his title to the said lands; and, in the mean time, to maintain his right of entry, title, and claim to the said lands; and it was proved, that under this letter of attorney, *Baldwin* entered on the premises, on the 6th of

ALBANY,
January, 1823.

*May*, 1819, and there executed and delivered to the plain-tiff, *Lion*, the lease mentioned in the first count in the de-claration. There can be no doubt but that this was a suffi-cient entry and claim to prevent the defendants setting up the fine as a bar, if the cognizors had any estate in the pre-mises.

The last objection, that *Medcef Eden*, the elder, had no le-gal title to the premises, at the time of his death, is wholly unsupported. The case states him to have been seised of the premises when he devised the same; but the defendants claim under *Joseph Eden*, who took the premises under the will; and surely the defendants are estopped from denying that they entered under *Joseph's* title.

Judgment for the plaintiff.