WILLIAMS *vs.* GRAVES, Ex'R.

1. Where a testator bequeathes slaves to his two daughters and the heirs of their bodies begotten, and adds, that if either of the daughters should die without an heir of her body begotten, the slaves bequeathed to her should become the property of " the surviving daughter and my two sons," the term *surviving* limits the meaning of the words *die without an heir of her body begotten* to issue *living at the death of the first taker*, and the limitation over is good as an executory devise.

Error to the Circuit Court of Sumter. Tried before the Hon. Sam'l Chapman.

THIS was an action of detinue brought by the defendant against the plaintiff in error to recover possession of a slave. Each party claimed under the will of Robert Graves, dec'd—the plaintiff below as his executor, and the defendant as administrator of Thomas Faust, deceased, the late husband of Mary Ann Graves, one of the legatees named in the will,· and into whose possession the slave in controversy came with the assent of the executor. The fourth item of the will gave the slave with others to the said Mary Ann and "the heirs of her body begotten." The sixth item, upon which the whole case turns, ·may be found in the opinion of the court.

ORMOND and J. L. SMITH, for plaintiff in error :

1. The language of this bequest would, if the subject matter were land, create an estate tail, and therefore the entire property 'vests in the first taker.—Jesson v. Wright, 2 Bligh's Rep. 1; Bosnall v. Harvey, 4 B. & C. 610 ; Atkinson v. Featherstone, 1 Barn. & Ald. 944 ; Sesson v. Seabury, 1 Sumner, 247; Bennet v. Tankerville, 19 Ves. 170; Cole v. Goldsmith, 2 Marsh. 517; 2 Eng. C. L. 211; 2 Jarman on Wills, 271; Machin v. Machin, 15 Ala. 373 ; Lenoir v. Rainey, ib. 667.

2. Considered as an executory devise, the limitation is too remote, as it creates a perpetuity.—Dunn v. Davis, 12 Ala. 135; McGraw v. Davenport, 6 Porter, 319 ; 1 Jarman on Wills, 219.

3. The power given to the trustee to take possession of the slaves is not an absolute power to be exercised arbitrarily, but can only be exercised when the event happens—an attempt to defeat the remainder by removing the slaves from the country, ·or by squandering them. To apply the proper test, if the slaves ·were about to be squandered or removed, there can be no doubt, ·if the trustee should decline to interpose, a court of chancery ·would interfere and prevent the defeat of the trust. Yet if it is a discretionary power, no court could interfere with the exercise of the discretion.—Hill on Trustees, 485 ; 1 Story's Eq. §255, 256 ; Walker v. Walker, 5 Madd. 424.

4. The charge of the court is manifestly wrong, as there is no pretence for considering this a separate estate in the wife.

F. S. LYON, for defendant:

1. In the construction of .wills, as well as other instruments,

the *intention* of the parties, if compatible with law, must govern; and so rigid is this rule of construction in regard to wills, that the technical meaning of words is sometimes disregarded, and words even rejected.—See Heirs of Capal v. McMillan's adm. 8 Porter, 197.

2. The words "heirs" and "heirs of the body" were used in the will as synonimous with children, and the will contemplated that the slaves should be used during the life-time of the daughter for her support and maintenance and the support and maintenance of her children, if she had any, with remainder to the children, and in default of children, with remainder to the surviving sister of the tenant for life. The limitation over would not be too remote to operate, as settled in Doyle v. Bouler, 7 Ala. 246. But upon the question as to what was the *intention* of the testator as shown by the whole will, there can be no doubt so long as the rule prevails that the language employed is to be understood in its ordinary acceptation, and the whole instrument taken together. If in the last clause of the will, in reference to the slaves, the legal power was conferred upon the executor to take possession of the slaves whenever in his opinion the contingency contemplated presented itself, and hire them out for the benefit of the testator's daughter, how could the husband at the same time have the legal title?

DARGAN, C. J.—The first question we propose to examine is, whether the words used in the will are sufficient to sustain the limitation over in favor of the sister and brothers of Mary Ann, should they survive her, and should she die without heirs of her body.

I will here observe, that there is no question involved in more doubt and difficulty, or that calls more loudly for legislative aid, than the one, what words will be sufficient to create a good limitation over, by way of executory devise. It is true that the books abound with decisions on the question, but they are so contradictory that it is exceedingly difficult to come to a satisfactory conclusion in many instances as to what the law is; and even when we feel compelled to declare that particular words will not create a good executory devise, we often feel satisfied that the intention of the testator is violated by such construction. For instance, if a devise be to A., and should he die without is-

sue, then over, this is said to mean an indefinite failure of the issue of A., and the limitation over (the subject matter being personalty) is void. On the other hand, had the devise been to A., and should he die without leaving issue living at his death, then over, this limitation would be sustained. Now, I submit that in every instance, whether the testator uses the one set of words or the other, his meaning and intention are the same. Yet perhaps no court, professing to be governed by the common law, and regarding a long train of decisions so often repeated as to become a rule of property, could put the same construction upon them, but would have to regard the former words as insufficient to create a good executory devise, whilst the latter would be sustained as sufficient. The courts, however, seeing that they have departed from the intention of the testator in holding that a limitation over after a dying without issue to mean an indefinite failure of issue, will lay hold of slight circumstances or expressions to relieve themselves from this rule of construction, and to give effect to the real intention and design of the testator; and the result of all the cases on the subject seems to be this, that if personal property be limited by way of executory devise *after a dying without issue*, these words will not within themselves imply a definite failure of issue, that is, a failure of issue at the death of the first taker. Yet, on the other hand, where there are other circumstances or expressions denoting a definite failure of issue, the limitation will be sustained, notwithstanding the words creating the previous estate would, if standing alone, create an express estate tail.—Barlow v. Salter, 17 Vesey, 481; Fearne on Remainders, 485.

By the 4th clause of the will, there can be no doubt but that Mary Ann would have taken an estate tail at common law, had the subject matter of the will been realty. The 6th clause of the will creates the remainder over, and raises the question whether the testator intended the limitation over to take effect in favor of the brothers and sister of Mary Ann, should she die without issue living at her death. If we can say consistently with the decisions that such was his intention, then we must sustain the limitation over. The language of this clause is as follows: "It is hereby more fully declared to be my intention, that the negroes willed and devised to my said daughters is for their support and maintenance, and for the support and maintenance

of the heirs of their bodies begotten, or to be begotten, and to descend directly after their death to the heirs of their bodies begotten; if either of my said daughters should die without an heir of her body begotten, the property so willed them, or the one so dying without an heir, the property of this one to pass off and become the property of the surviving daughter and my two sons and their heirs, each one to have an equal share of the property willed to the daughter so dying without heirs. It is further my will, that my executors hereinafter mentioned and appointed, or the survivor of them, their heirs, assigns or representatives, shall, and they are hereby allowed and requested that if at any time they shall think my property so devised to my daughters is about to be squandered or removed from the country, so as to defeat this my last will and testament, to take the same into their possession and hire it out for the benefit of my said daughters and their heirs as aforesaid." Are there any expressions in this clause of the will of the testator that will justify us in holding that he intended the surviving daughter and sons to take immediately on the death of one of his daughters, and if they could not then take because the deceased daughter left heirs of her body, that they never should afterwards, although the issue of such heir failed? In legal language, did he mean a definite or indefinite failure of the heirs of the body of his daughter that should first die? In the case of Hughes v. Sayre, 1 P. Wms. 534, the testator having two nephews, divided the surplus of his personal estate to them, and added, if either of them should die without children, then to the survivor. It was held that the dying without children must be taken to be a dying without children living at the death of the nephew who should first die, because the limitation over was to the surviving devisee. The same construction was put on similar words in a bequest of personal property in the case of Nicholls v. Skinner, Chan. Prec. 528. These decisions are quoted by Mr. Fearne in his treatise on Remainders, and have received the sanction of that eminent writer. In the case of Moffatt v. Strong, 10 Johns. 11, the testator, after devising his estate real and personal amongst his five sons, added, "If any of my sons should die without lawful issue, then his or their part or parts to be equally divided among the survivors." It was decided that the limitation over in favor of the survivors was good. Again, in

the case of Anderson v. Jackson, 16 Johns. 381, the testator devised one farm to his son Joseph and his heirs forever, and another farm to his son Medcef and his heirs forever, and added, "it is my will that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor. Joseph died without issue, and the question was whether Medcef could claim his share under the will. After a deliberate examination of the question, it was held that the limitation over in favor of the survivor was good. These decisions have been recognised in many other cases, which it is not necessary to state at large.—See 4 Wend. 277; 2 Cowen, 33; 20 Johns. 483. In Mifflin v. Neal, 6 Searg. & R. 46, the bequest was of personal property to two sons, aad in case either of them died without a will or lawful issue, then his share to descend to *the survivor*, his heirs and assigns forever. The Supreme Court of Pennsylvania held this to be a good limitation over. The same construction was put upon similar words in a will in the case of Vedder v. Everston, 3 Paige, 281. In the case of Cordle v. Cordle, 6 Mun. 455, the testator willed that his property should be equally divided between his two sons, and then added, "that if either of his sons should die without lawful heir, his surviving brother should inherit his share." Held, that this was a good limitation over in favor of the surviving brother, upon the death of the other without issue. So, where a testator gave to his three sons all his land, and if either of them should die without children, the survivors to hold his share, the Supreme Court of Massachusetts held this to be a good executory devise.—Richardson v. Noyes, 2 Mass. 56. In the case of Morgan v. Morgan, 5 Day 517, the testator devised his real estate to his four sons, but added in his will that if either of his sons should die without children, his brothers should have his part in equal proportions. It was held that the limitation was good as an executory devise, and that on the death of one of the brothers without children living at his death, that his surviving brothers became entitled to his share as tenants in common. See also Couch v. Gorham, 1 Conn. 36, in which the same construction was put upon a similar will; also, Dasheel v. Dasheel, 2 Harr. & Gill, 127; Jackson v. Blanshaw, 3 Johns. 292.

These authorities are ample to show that where a limitation over after a dying without issue is created by the word survivor

or surviving, the courts will, in consequence of these terms, limit the *dying without issue* to mean issue living at the death of the first taker, and not to the failure of the issue of the first taker at any indefinite time after his death. I admit that there are to be found cases in some of the decisions of our State courts that hold that the term survivor cannot have the effect to limit the failure of the issue of the first taker to the time of his death. But the weight of authority, both English and American, is the other way, and we are entirely satisfied that they accord strictly with the intention of the testator. I therefore readily yield my assent to them, and am of the opinion that if personal property be given to two, and then the will adds, should either die without issue, her share to go to the survivors, that this should be construed to mean a definite failure of issue, and therefore the limitation over will be good by way of executory devise. Applying this rule of construction to the will before us, we are bound to hold that should Mary Ann depart this life without leaving heirs of her body living at her death, her sister and brothers, if they survived her, would become entitled to the slaves bequeathed her by her father.

Having attained this conclusion, we think it very clear that the executor has the legal right to take possession of the slave sued for, whenever he may think it his duty under the will to do it, for the purpose of protecting the interest of those who may be eventually entitled on the death of Mary Ann. This right is expressly given by the will, and there is no principle of law that will authorise us to prohibit him from exercising it. He is therefore entitled to recover the slave, not only as against Mary Ann, but also as against her assignee. It becomes then an immaterial question, so far as the result of this suit is concerned, whether the will creates a separate estate in her favor in the slaves or not, for the right of the executor to take possession of the slaves bequeathed to her and to hire them out for the benefit of those entitled is paramount to her right of possession, and of course is equally so against any one who may claim through her.

Let the judgment of the Circuit Court be affirmed.