Landman v. Snodgrass.

LANDMAN ET AL. vs. SNODGRASS.

1. A testator bequeathed the whole of his property, both real and personal, to his wife during her natural life, "with the following exceptions : I give and bequeath the special legacies to my three daughters hereinafter named— I give my daughter Frances one negro girl named Maria, to my daughter Lina one negro girl named Aggy, and to my daughter Mary Ann one negro boy named Alick ; which latter named negro, Alick, I give to my daughter Mary Ann, and to the heirs of her body, *and in the event that Mary Ann should die without any such heirs, it is my will, that said boy return to my estate, to be disposed of as the rest of my property.* It is further my will, that at the death of my wife, the whole of my estate, both real and personal, be equally divided among all my living children, or to the living heirs of their body, the three above-named daughters to receive an equal proportion in common with the rest of my children, notwithstanding the above-named special legacies ; provided, however, that the portion falling to my daughter Mary Ann be subject to the same requirements that are made in reference to the boy Alick given to her above." Mary Ann was unmarried at the time of the execution of this will, and also at the testator's death, but she afterwards married, and had one child born, who died before her ; and upon her death without issue surviving her, the surviving children and grandchildren of the testator brought detinue against her husband for the boy Alick : *Held*, that the words of the will must be construed in their legal sense, to mean an indefinite failure of issue, and therefore the limitation over was void for remoteness, and Mary Ann took the absolute interest in Alick.

38

APPEAL from the Circuit Court of Madison.
Tried before the Hon. THOS. A. WALKER.

DETINUE by the appellants against John E. Snodgrass, for a slave named Alick ; plea, *non detinet*, in short by consent.

On the trial, as appears from the bill of exceptions, the plaintiffs introduced as evidence the will of William Landman, deceased, which was as follows :

" I, William Landman, of the county of Madison, and State of Alabama, being in perfect mind and memory, do make, ordain, and publish this my last will and testament, in the manner and form following, viz.: I loan to my wife, Frances Landman, the whole of my estate, both real and personal, including land, negroes, stock of every description, household and kitchen furniture, &c., during her natural life ; out of the proceeds of which, including my present crop, it is my wish, that she should pay all my lawful debts, and raise and school my children ; with the following exceptions, viz.: I give and bequeath the special legacies to my three daughters hereinafter named—I give my daughter Frances one negro girl named Maria, to my daughter Lina one negro girl named Aggy, and to my daughter Mary Ann one negro boy named Alick ; which latter named negro, Alick, I give to my daughter Mary Ann, and to the heirs of her body ; and in the event that Mary Ann should die without any such heirs, it is my will, that said boy return to my estate, to be disposed of as the rest of my property.  It is further my will, that at the death of my wife, Frances Landman, the whole of my estate, both real and personal, be equally divided among all my living children, or to the living heirs of their body, the three above-named daughters (Frances, Lina, and Mary Ann) to receive an equal proportion in common with the rest of my children, notwithstanding the above-named special legacies ; provided, however, that the portion falling to my daughter Mary Ann be subject to the same requirements that are made in reference to the boy (Alick) given to her above.

" In testimony whereof, I have hereunto subscribed my name on the day and date above mentioned," &c.

" It appeared in evidence, also, that after the death of said testator, said slave, with the assent of the executor, passed

into the possession of said Mary Ann, with whom the defendant intermarried in 1843, and after such intermarriage the defendant had possession of said slave, until the death of said Mary Ann in August, 1852. The plaintiffs James Landman, Samuel Landman, Elizabeth Simmons, and Lina Beadle, are children of said testator, and the brothers and sisters of said Mary Ann ; and the other plaintiffs, who are described in the writ and declaration as infants under twenty-one years of age, are grandchildren of said testator, whose parents have died since said testator. Frances Landman, the widow of said testator, is yet living. James Landman is the administrator with the will annexed of said testator. Mary Ann died, leaving no child surviving her ; but there was a child born of her marriage, who died in her lifetime.

"On this state of facts, the court charged the jury, that Mary Ann, under the provisions of said will, on taking possession of the boy Alick, became absolute owner, and that the defendant, by intermarriage with her, and taking possession of said boy, acquired an absolute title to him, of which plaintiffs could not divest him in this action; and· to this charge the plaintiffs, by their counsel, excepted."

The charge of the court is now assigned for error.

C. C. & J. W. CLAY, for the appellants :

I. THE *intention* of testator, gathered from the whole will, is the law of devises, and will govern the court in its construction, if that intention be consistent with the rules and policy of the law.—Ram on Wills, 1 (8 Law Lib.) ; Powell v. Glenn, 21 Ala. 466 ; Smith v. Bell, 6 Peters 68. The rule, that a remainder may be limited after a life estate in personal property, is as well settled as any other principle of our law. The attempt to create such limitations is not opposed by any rule or policy of the law. If such intention is manifested, the courts will sustain it.—6 Peters, *supra.* Chancellor Kent (4 Comm. 282) says : " In bequests of personal property, the rule [that the words *dying without issue*, &c., make an estate tail] will, more readily than in devises of land, be made to yield to other expressions or slight circumstances in the will, indicating an intention to confine the limitation to the event of the first taker dying without issue living at his death. The courts,

according to Mr. Fearne, lay hold, with avidity, of any circumstance, however slight, and create almost imperceptible shades of distinction, to support limitations over of personal property."—And so Willis's Lessee v. Bucher, 3 Wash. C. C. R. 369.

II. With these principles in view, it is obvious, that Wm. Landman did not intend his daughter, Mary Ann, to take an absolute estate. He gave his daughters, Frances and Lina, each, a negro girl, without condition or qualification, showing that he fully intended their interests to be absolute ; and if he had intended Mary Ann's to be so, he would have used similar language. (2.) This view is strengthened by looking to Mary Ann's condition in life, which may legitimately be considered, to ascertain testator's meaning, and the motives influencing him to give her less than an absolute estate. Smith v. Bell, *supra*. A reasonable motive is found in the fact, that she was an unmarried daughter, (see bill of exceptions,) and probably the youngest (as she is mentioned last, of testator's special legatees.) He wished to protect her and her children (if any) against the improvidence of any future husband, by disabling him from acquiring an absolute estate, with the power of alienation.

III. That testator did not intend to create an estate tail, is manifest from the following considerations :

(1.) The property bequeathed is *personal*, and not only that, but a *male* negro, incapable of increase, and, therefore, incapable of transmission, individually, or in his offspring, to an indefinite succession of heirs. It is absurd to suppose, that any person, with sense enough to make a valid will, would seek to create a perpetuity in a *male* negro. The testator could not, therefore, have so intended, but, "by heirs of her body," meant *children*, as people, unversed in legal technicalities, generally understand and use the term.

(2.) This is further shown by the disposition to be made of Alick, after Mary Ann's death, i. e. to whom he was to go : " In the event Mary Ann should die without any such heir, it is my will that said boy return to my estate to be disposed of as the rest of my property." He subsequently declares his will, that his " whole estate be equally divided among all my *living children* (or the *living* heirs of their body)",—that is, to

his children who might be "living" at Mary Ann's death, and the *living* children of such of his children as might be dead at that time. McGraw v. Davenport and Wife, 6 Port. 332, shows that "*or*" may be construed "*and*", to carry out the manifest intention of a testator, and that a limitation over to grandchildren is not too remote.—So Doyle v. Bouler, 7 Ala. 246, as to the latter.

The limitation over was to take effect (if at all) immediately Mary Ann should die; for, if she could ever have "heirs of her body", they must be then in being, and, if not then, they never could be thereafter. It was to take effect at Mary Ann's death, in Alick's lifetime. These two facts, conjoined, prove, incontestably, that the testator did not intend the limitation over to be suspended until after an indefinite failure of issue, but to take effect upon Mary Ann's dying without children living at the time of her death. If so, "heirs of her body", are words of purchase, and not of limitation; Mary Ann took a life estate only, and the limitation over is good by way of executory devise.—Woodley v. Findley, 9 Ala. 716.

The cases of Williams v. Graves, executor, (17 Ala. 65,) and Powell v. Glenn, (21 Ala 465,) present a similar point. It is true, William Landman does not use the words "survivor" or "surviving", but his language imports the same. He directs an equal division, at the death of first taker, among his living children, (who are, in fact, *surviving* brothers and sisters,) and the *living* children of such of them as might be dead. The devisees bear the same relation to the devisor, but are differently designated. He calls them his "*living* children", instead of Mary Ann's *surviving* brothers and sisters.

To the same effect are Jackson v. Christman, 4 Wend. 277; Cordle v. Cordle, 6 Munf. 455; Moffat v. Strong, 10 John. 13, and many other cases, where the term *survivor*, or *surviving*, is used. The term "*living*", applied to the "heirs of their (his children's) body", will, we apprehend, have the same effect as when applied to his children; since the relationship is not important, but whether or not the will sufficiently designated those who were to take the limitation over, by which to determine whether or not that limitation is too remote.

The case of Pells v. Brown (Cro. Jac. 590) is in point. There, the testator devised certain lands to his son Thomas, " and if Thomas died without issue, *living* William his brother, that then William his brother should have those lands, to him and his heirs and assigns forever." Thomas died without issue, *living* William, and the court declared the limitation over good as an executory devise, the devise being of lands, where the rule is more strict than in cases of personal bequests. Wm. Landman gave Alick to Mary Ann and the heirs of her body, "and in the event Mary Ann should die without any such heir," to " be equally divided among all my *living* children (or the *living* heirs of their body)." This is a fair statement of testator's will ; for the omitted words do not alter his intention as to the ultimate destination of Alick. Except in the property bequeathed, wherein does this case differ from Pells v. Brown, a leading case, never overruled ? See Greenl. Overruled Cases.

In Johnson. v. Curvin, (10 Barr 498,) a devise was made to the testator's daughter, her *heirs and assigns*, and " if any of my daughters die, *without heirs of their body*, their part to be equally divided between the *survivors* of them and my grand children, counting A's children as one and B's children as one." Held, that this was an executory devise to the grand-children and the surviving daughters, and not a remainder, which could be barred by the first taker. A will contained the following clause : " I wish the property, which I bequeath and bestow on Sarah A. Truly, to be given and secured to herself and *her bodily heirs*, should she marry, and at her death, should she have no issue, it is to go to her brothers and sisters." Though " surviving" was not in the will, and there was no other word qualifying " brothers and sisters",—held, this was not an estate tail, but an executory devise.—Rucker v. Lambdin, 12 S. & M. 230. A devised as follows : " I give unto my nephew I., my slave S.; in case the said I. should die *without lawful heirs of his body*, I give the said slave S. to my nephew T." Held, the limitation over was not void, as being too remote.—Biscoe v. Biscoe, (6 Gill & John. 232). The *designatio personarum*, in none of these cases, is more certain than " my *living* children, or the *living* heirs of their body," is in Landman's will.

In Jackson v. Staats, (11 John. 338,) the testator, after sundry bequests of real and personal estate to his sons and daughters, &c., says : " and if any one or more happens to *die without heirs*, his or their parts or shares shall be divided among *the rest of the children.*" The court assimilated it to Moffat v. Strong, *supra*, where the will said, " and if any of my sons should *die without lawful issue*, then let his or their part or parts be divided equally among the *survivors*", &c., and held, that the two cases must receive the same construction, and the devise should go over to the testator's surviving children.   This case seems very much in point : for Landman's will is, " in the event Mary Ann should *die without any such heir* [of her body] it is my will, that said boy return to my estate to be disposed of as the rest of my property", and then directs the rest of his property, after his wife's death, to " be equally divided among *my living* children, (or the *living* heirs of their body,)" &c.   This presents quite as strong, if not a stronger case, than the will in Jackson v. Staats did, for the plaintiffs.   Here, my *living* children, or the *living* heirs of their body," is the language—there, " the *rest* of the children."   Here, the limitation over is to take effect after *a dying without any heir of her body*—there, after *a dying without heirs*.   Jackson v. Staats is a leading case in New York, and the opinion of the learned and able Judge Spencer was concurred in by all the court.   See, also, Diehl v. King, 6 Serg. & R. 29.

IV.   What effect have the words, "return to my estate", in explaining testator's intention ?   He, certainly, did not mean them to be taken literally : for he appointed no executor to keep together his estate, and he so disposed of it, as to have none for Alick to return to, either before or after his wife's death.   He probably attached no particular meaning to these specific words, but intended to express the general idea, conveyed by the entire sentence, that he wished Alick " disposed of as the rest of my property."   The words, however, bear a construction favorable to the plaintiff's claim.   In Moseby v. Corbin, (3 A. K. Marsh. 289,) where a testator devised a slave to A. for life, and, *if she should die without issue*, then the slave and her increase *to return to his estate* after the death of her husband, it was held, that " without issue" meant without

issue living at her death. May not the words "return to my estate" in Landman's will, likewise, limit the words, "die without such an heir", to an heir living at Mary Ann's death, and thus render the limitation over effectual?

V. If it is assumed, that the birth of a child to Mary Ann defeated the limitation over, the language of the will, "die without such an heir" ["of her body"], is a conclusive answer. The child died in Mary Ann's lifetime : hence she never had "an heir of her body." "*Nemo est hæres viventis.*" The point has been directly decided in Connecticut. A devised his real estate to his four sons, their heirs and assigns forever, and, if either of his sons should "die without children, his brothers should have his part in equal proportion." B, one of the sons, died without issue, *though he had a child, which died during the lifetime of the father.* Held, that the limitation over was good by way of executory devise, and that by the words, "die without children", was intended a dying without children living at the death of the first devisee.—Morgan v. Morgan, 5 Day 517. In cases of personalty, the term "dying without issue," is construed to mean without *leaving* such, if in accordance with the intent of the testator.—Hopkins v. Jones, 2 Barr 69 ; Holmes v. Williams, 1 Root 332. We have not met with a case to the contrary in English or American Reports. The words, dying without issue, or without heirs, and the like, are always referred to issue, heirs, &c., living *at* or *after* the death of the first taker, from the old cases of Targett v. Grant, (Gilbert's Eq. R. 149,) Denn v. Shelton, (Cowp. 420,) Pinbury v. Elkin, (1 P. Wms. 563,) and Forth v. Chapman, (*ib.* 663,) down to this time.

JAMES E. BELSER, *contra*, contended that the charge of the court was correct in its result, and cited Hamner v. Smith, 22 Ala. 433 ; Isbell v. Maclin, 24 *ib.* 315.

GOLDTHWAITE, J.—It may be remarked, that in bequests of personal property, where words are used by the testator which, without explanation, import an indefinite failure of issue, courts have frequently shown a stronger inclination to bend the rule of construction to the presumed intention of the testator, than in devises of real estate, and have allowed

circumstances to control the words in the first case, which they have conceded to be insufficient in the last.—Forth v. Chapman, 1 P. Wms. 663; Doe v. Lyde, 1 Term R. 593; Doe v. Ewart, 7 Ad. & El. 636; Moffat v. Strong, 10 Johns. R. 12 ; Newton v. Griffith, 1 Har. & Gill 111; Royall v. Eppes, 2 Munf. 479; Brummett v. Barber, 2 Hill's S. C. 544-45; Williams v. Turner, 10 Yerg. 287; Mazyck v. Vanderhost, 1 Bail. Eq. 48. But there. is great question as to the soundness of this distinction.—Arnold v. Congreve, 1 Taml. R. 347; Zolicoffer v. Zolicoffer, 3 Bat. 438. Be this as it may, however, all the authorities at this day agree, that words like those used in the present will, (such as "dying *without heirs*," or "without issue," or "*on failure of issue*",) without explanation, mean an indefinite failure of issue, and must be so construed, unless from the language or circumstances of the other parts of the will, it is ascertained they were not used by the testator in that sense ; in which case, the rule of construction yields, and the intention prevails.—4 Kent's Com. (7th ed.) 273; Williams v. Graves, 17 Ala. 62. Unless, therefore, on an examination of the will before us, we find something in it which indicates that the testator did not intend to use the words importing an indefinite failure of issue in that sense, there is an end of the case. It would be unnecessary to go farther, and inquire what indications of a different intention were necessary to overcome the language employed. We must, of course, be governed by the rule which has repeatedly received the sanction of this court, (Isbell v. Maclin, 24 Ala. 315, and cases there cited,) and construe the words in their legal sense.

It is supposed by the counsel for the appellants, that some evidence that the words referred to were intended to mean a definite failure of issue, is to be found in the character of the bequests made by the testator to his other two daughters. The argument is, that it is apparent that it was not the intention of testator to give the slave to Mary Ann absolutely, as he had given the slaves bequeathed to his other daughters ; and as the words employed by him in the bequest to the former, if construed to mean an indefinite failure of issue, would necessarily produce this result, that construction should not be given to them. We cannot yield our assent to this rea-

soning.  It may be conceded, that the testator did not intend
to confer the absolute interest in the slave on Mary Ann, and
if she takes that degree of interest in the bequest, it is not
because it was so intended by the testator, but because the
limitation over which was intended by him is void as against
the policy of the law ; and this limitation being void, leaves
the entire interest in the first taker.

Neither can we regard the sex of the slave bequeathed as .
affording any indication of the intention of the testator to use
the words in a different sense from that which the law ordi-
narily attaches to them.  It is true, that this circumstance
would be conclusive to show that the testator did not mean
to create a perpetuity ; but we do not regard such an inten-
tion as necessary to avoid the limitation.  The law denounces
settlements or bequests of this character, made with regard
to this species of property, because the result of them, if al-
lowed, would be to lock up and restrain it from alienation for
an indefinite period of time, which might extend through
generations.

It is also urged, that the limitation to the " living children"
of the testator, or " the living heirs of their body", on the de-
mise of Mary Ann without heirs of her body, tends to show
that the testator must have meant dying without such heirs
living at her death ; and the case of Williams v. Graves, 17
Ala. 62, is relied on to sustain that position.  In that case,
the bequest was to the testator's two daughters " and the heirs
of their bodies begotten"; and if either of the daughters was
to die " without such an heir", the slaves bequeathed to her
were to pass to the " survivor" and the testator's two sons.
*It was held*, that the word " survivor" limited the meaning of
the words " without such an heir", to issue living at the death
of the first taker.  Here the use of the word referred to
showed that the slaves given to one daughter were to pass to
the other, as soon as she became the survivor, if at all ; and
in that view, the limitation could not have taken effect, if an
indefinite failure of issue had been intended.  But had the
words been such as indicated an intention which might have
taken effect after that point of time, had the issue failed, a
very different case would have been presented.  In other
words, had the limitation been to the survivor, if living, but

to her heirs, or the heirs of her body, if dead, it would then have denoted the intention of the testator, that the limitation over was not dependent upon the survivorship alone, but depended rather on the failure of issue, and would therefore be void. Here the testator provides, that if the first taker dies without heirs of the body, the property given to her shall return to his estate, and be equally divided among his "living children," or the "living heirs of their body"—that is, if on the failure of issue of the daughter, the testator had children living, the property was to pass to them; and if they were dead, their issue were to take in their place.

Taking the whole will together, and as to the slave in question, we think the meaning of the testator cannot be mistaken. His object was, to provide for an unmarried daughter. He did so by a bequest of property which he intended to continue with her and her posterity, until the one ceased to exist, and the other became extinct; and if these events happened before the death of the slave bequeathed, he was to return to the estate, and become the property of the other children of the testator, if living, and to their posterity, if dead. This disposition of property is entirely in accordance with our natural affections and instincts, but it is one which the law, for reasons of its own, does not tolerate, and which courts professing to be governed by precedents long established and firmly adhered to, cannot sustain.

Judgment affirmed.

RICE, J., having been of counsel, did not sit in this case.