Gardiner, J.
 

 By the devise of Albert Terhune, his sons, Roelof, Abraham, Isaac and John, took each an estate tail in an undivided fourth part of the lands of the testator, with cross-remainders between themselves. (6
 
 Mad.
 
 258.) The successive limitations over were to await the regular expiration of the primary estates granted to the sons respectively, and were therefore remainders, and not conditional limitations. (2
 
 Butler's Fearne,
 
 51, 56, 67.) And as these remainders were limited by the devise to the surviving sons of the testator, in default of issue upon the part of the shortest liver, they were of course contingent.
 

 The testator made his will in 1797, and died in February
 
 *357
 
 ■1801, seized of the land in controversy. John Terhune survived his brothers, neither of whom left issue, and died himself .without issue, in June, 1842. By a subsequent clause of the will, it was provided that if all the sons of the testator died without issue, then the- “
 
 children
 
 of his daughters should have all his real estate, to them, and their heirs forever.”
 

 The statute of 1786, abolishing entails, turned the primary ^states in tail into a fee simple absolute. The cross-remainders fell with the primary estates upon which they were dependent; as a remainder cannot be limited after 'an absolute fee. To avoid this consequence, we are asked by construction to turn the primary estates into a conditional fee, and the remainders into executory devises, in order to effectuate the intent of the testator. To do this would be to contradict the act, both in its letter and spirit. The statute says, that “ the estate tail shall be deemed a fee simple absolute.” This is at least equivalent to a declaration that it shall be deemed an unconditional fee, in the person seized of the estate tail. It is true that fee, fee sim-pie, and fee simple absolute, have the same meaning, and they all stand opposed to a conditional fee ; which imports an estate, that would be a fee, were it not for the condition.
 

 We obtain no light to aid us in construing the statute, from the intentions of the testator. The testator gave one fourth part of his real estate to each of his' sons, and the" heirs of their bodies lawfully begotten. If the devise had stopped here, the reversion would have remained in him, and at his death descended to his heirs. The statute, however, overrules the intention of the testator; deprives his heirs of the reversion, and bestows the whole estate upon the first taker, and his heirs generally. So if the testator, after the primary estates tail, had given the remainder, upon failure of the issue of his sons, to his daughters and their heirs; upon his death a remainder in fee would have vested. And yet the statute would have annulled this estate, and vested the absolute fee in the first tenant in tail. If the legislature, in unfettering estates of this description, swept away reversionary interests and vested remainders, by transmuting them into absolute fees, it is not probable that they would pay more regard to contingent rights of third persons, which
 
 *358
 
 might never vest in interest, or possession, whether known as remainders, or conditional limitations.
 

 If we look at the spirit in which the reforms of that day were prosecuted, it is far more probable that the legislature" of 1786 would have abolished all conditional limitations, that rendered estates inalienable, than that they would have preserved contingent remainders, in estates tail, bj'- converting them into ex-ecutory devises. It is sufficient that they did not preserve them, nor authorize their preservation in this manner. The men who framed that law were not ignorant of the consequences of their work. They knew, at least, that by turning the estate tail into a fee simple, they as effectually demolished the contingent remainders dependent upon it, by depriving them of their only legal foundatioii, as if they 'had declared that purpose in express terms.
 

 Again, the 2d section of the act of 1786 indicates the intention of the legislature to abolish entails, without reference to limitations, subsequent to the primary estate. The section provides, that “ when lands have theretofore been granted or devised by the tenant in tail, and the grantor has continued in possession, that the grant or devise shall be as effectual as if the tenant had at the
 
 time of the grant
 
 or devise been seized in
 
 fee simple”
 
 Here is" a confirmation of grants, made by the tenant in tail, without right, without respect to contingent or vested remainders, executory devises, or any condition whatever, annexed by the donor to the gift. An executory devise, if preserved by implication, would have suspended the power of alienation; but by the statute, the grant is to enure to the benefit of the grantee, as though the tenant had been seized in fee simple at the time of the grant,
 
 “ any law
 
 to the contrary thereof notwithstanding.”
 

 3d. Executory devises were' unknown to the common law. They were subsequently tolerated in a devise, where the intention of the testator could in no other way be carried out. They thad their origin in necessity. Hence the rule, that where a limitation over could take effect as a remainder, it should "not be construed as an executory devise. The counsel for the plaintiff was understood to concede, that the sons of Albert Terhune
 
 *359
 
 would take cross-remainders in the estate devised under the statute de donis. ,
 

 That statute is still in force so far as to authorize the creation of entails. . The law of 1786 does not prohibit them, but when created turns them into estates in fee simple. To determine whether an estate is thus convertible, it must be regarded independently of that statute. In this case, according to the' devise and the state of things existing at the death of the testator, “ the contingency,” (in the language of Lord Hale) “ was limited to depend upon an estate of freehold, which was capable of supporting a remainder.” In such case, “ it shall never be construed to be an executory devise, but a contingent remainder only, and not otherwise.”
 
 (Purefoy
 
 v.
 
 Rogers, 2 Saund.
 
 386;
 
 Doe
 
 v.
 
 Morgan,
 
 3
 
 Term R.
 
 763.) To convert this remainder into an executory devise, or'a limitation in the nature of an executory devise, would be to violate a rule which Lord Kenyon states to be uniform and without exception. (3
 
 Term R. supra; Doe
 
 v.
 
 Holmes,
 
 3
 
 Wilson’s R.
 
 257.)
 

 To conclude, the statute turned the primary estate into “a fee simple absolute.” We think that full effect must be given to this emphatic language, without regard to any interests, vested or contingent, which are limited by the deed or devise, creating the estates tail, and which are inconsistent therewith— that the sons of Albert Terhune, on his death, became seized in fee respectively of an undivided fourth part of the real estate of the testator; that the enlargement of the primary estates into fees, absorbed, and thereby extinguished the remainders to the surviving sons, and the limitation over to the children of his daughters. That the plaintiffs, in right of Maria Lott, are consequently entitled under the will, and the facts stated in the special verdict, to four-eighteenths of the premises mentioned in the declaration. The judgment of the supreme court must ne affirmed.
 

 Cady, J. and Strong, J. also delivered opinions in favor ot affirmance.
 

 Judgment affirmed.