Wilson *v.* Wilson.

---

JAMES WILSON *vs.* MARY L. WILSON and others.

T. W. died in 1812, leaving a will by which he devised all his lands to his son T. M. W. in fee, charged with the payment of his debts, with a provision for his wife, and with a legacy to another son, J. W. He also left a codicil to his will, which recited the devise in the will, and proceeded thus: "Now I do order that if my son T. M. W. shall decease without leaving any male issue, the real estate given to my son T. shall be disposed of as follows: and I do dispose thereof, that his widow and child shall have the use of one half of the real estate as long as she remains his widow, and after her death or marriage it shall be equally divided between my son J., my daughter E., and my son T. M. W.'s child, or children." When the testator died, he left surviving him his sons T. M. W. and J. W., and E. P. a daughter. T. M. W. entered under the devise, and continued in possession until his death. He died in 1824, without male issue, but leaving a widow, who died in 1857, and three daughters, M., A. and S., who are still living. E. P. also survived her brother T. M. W., and died in 1856, leaving a son, a daughter and the children of a third daughter. In June, 1812, after the death of T. W., (the

Wilson *v.* Wilson.

testator,) E. P. executed and delivered a release and quitclaim to T. M. W. of all claim or right of claim which she then had, or which might thereafter arise to her or to her heirs or assigns to the real estate, by virtue of the codicil. On the 1st of July, 1823, T. M. W. mortgaged to J. W., the plaintiff, 24 acres, part of the land devised to him, to secure the payment of $1561.25. On the 17th of February, 1825, after T. M. W.'s death, J. W. assigned this mortgage to M. The assignment contained no covenants, but it purported to assign, transfer and set over not only the mortgage but "the land and premises therein described."

*Held,* 1. That the testator contemplated the period of the death of T. M. W., as the time when the limitation over upon the event of failure of male issue of T. M. W. should take effect, and the estates limited upon such failure should vest successively.

2. That T. M. W., by the will and codicil, took a defeasible fee in the whole of the lands, and that upon his death without issue, and the death of his widow, the lands passed by executory devise to J. W., E. P., and the children of T. M. W. in fee, unless the share of E. P. had been previously conveyed by her release to T. M. W.

3. That the release executed by E. P. to T. M. W. was, within the case of *Miller* v. *Emans,* (19 *N. Y. Rep.* 384,) valid and effectual to pass to T. M. W. all her contingent right, so that it afterwards became a vested estate in the releasee.

4. That E. P., previous to the execution of the release, could have made a valid mortgage upon her contingent interest in the lands devised, and that her assignee T. M. W. was equally competent to execute such an instrument. Accordingly *held,* that the mortgage executed by T. M. W. to J. W. was a lien, not only on his own estate under the codicil, in all the lands described, which determined at his death, but also upon the fee in one-third of those lands, which his children took as heirs to their father, through the release of E. P.

5. That J. W. having assigned, without qualification, a mortgage which described the premises generally or the estate of the mortgagor as if he owned the whole, was not at liberty to assert that he, the assignor, was the owner of a share of the lands not subject to the mortgage, but was bound to make the mortgage good out of his own share of the property.

A PPEAL from a judgment entered at a special term, upon the report of a referee, in an action for the partition of real estate.

*By the Court,* EMOTT, J.   This action was brought for the partition of a farm of land in the county of Westchester. It comes to us by separate appeals by the plaintiff and several

Wilson *v.* Wilson.

of the defendants, from different portions of the judgment, which was rendered at special term upon the report of a referee, who had been directed to take proof of the title, and of the other matters stated in the pleadings.

The referee reported both his conclusions of fact and the evidence taken before him, and this evidence is a part of the case upon which the appeals were argued. There were some questions of fact raised and discussed at the argument, and I have examined the pleadings and proofs with reference to these, as well as the other points in the case. It may perhaps admit of some doubt whether we can consider these questions, or the correctness of the conclusions of the referee, or the court at special term, as far as they were purely conclusions of fact. But waiving any such difficulty, if there be any, I am satisfied with the results attained in these particulars in the court below, and I shall assume and will proceed to state the facts as I understand them to be, and to have been found at the trial.

1. The lands in question were owned by Thomas Wilson, who died in June, 1812, leaving a will made on the 28th day of April in that year, by which he devised all his lands to his son Thomas M. Wilson in fee, charged with the payment of his debts, with a provision for his wife, and with a legacy to another son James Wilson; but also leaving a codicil to this will, made on the 2d day of May, 1812. This codicil recites the devise in the will and proceeds : "Now I do order that if my son Thomas M. Wilson shall decease without leaving any male issue, the real estate given to my son Thomas shall be disposed of as follows : and I do dispose thereof, that his widow and child shall have the use of one half of the real estate as long as she remains his widow, and after her death or marriage it shall be equally divided between my son James, my daughter Elizabeth, and my son Thomas M. Wilson's child or children." When the testator Thomas Wilson died, he left surviving him his sons Thomas M. Wilson, and James Wilson who is the plaintiff in this action, and a daughter,

Elizabeth Park. Thomas M. Wilson entered under the devise and continued in possession of the lands until his death. He died in 1824 without male issue, but leaving a widow who died in 1857, and three daughters, Mary L. Wilson, Ann Elizabeth Wilson and Sarah S. Reynolds, who are still living and are made defendants to this action. Elizabeth Park also survived her brother Thomas M. Wilson, and died in 1856, leaving a son, a daughter and the children of a third daughter, all of whom are parties to the suit.

The first question in the cause arises out of these facts. It is what estate Thomas M. Wilson took under the codicil, and what are the rights of the parties to this action representing the devisees named in the codicil, in consequence.

2. It farther appears that in June, 1812, after the death of the testator Thomas Wilson, Elizabeth Park executed and delivered a release and quitclaim to Thomas M. Wilson of all claim or right of claim which she then had, or which might thereafter arise to her or to her heirs or assigns, to the real estate in question by virtue of the codicil. Upon this a question is raised whether this instrument was effectual to pass any, and what estate to the releasee.

3. It farther appears that on the 1st day of July, 1823, Thomas M. Wilson mortgaged to James Wilson, the present plaintiff, 24 acres, part of the land now in question, to secure the payment of $1561.25, which mortgage was duly recorded. On the 17th of February, 1825, after Thomas M. Wilson's death, James Wilson, in consideration of $1525.71 paid to him by Richard Mead, assigned this indenture of mortgage to said Mead. The assignment contained no covenants, but it purported to assign, transfer and set over not only the mortgage but "the land and premises therein described." Richard Mead is dead, and his administrator Thomas A. Wilson is made a defendant, and asserts and asks payment of this mortgage. Whether it can be enforced against any interest or estate of either of the parties to the action, is the other principal question before us. I will proceed to consider

these three questions.   There are some other points of controversy of a minor character to which it may be necessary to allude.

It is well settled that the words "die without issue," and "die without leaving issue," in a devise of real estate, import an indefinite failure of issue, and not the failure of issue at the death of the first taker.

It has sometimes been attempted to make a distinction between the words "without issue," and "without leaving issue," but the attempt has not been successful.   (*See Duentry* v. *Duentry*, 6 *T. R.* 307; *Tenny* v. *Agar*, 12 *East*, 253; *Romilly* v. *James*, 6 *Taunt.* 263; *and Forth* v. *Chapman*, 1 *P. Wms.* 663.)   The case of *Paterson* v. *Ellis* in the court of errors of this state, (11 *Wend.* 259,) asserts the doctrine broadly, and is conclusive against any distinction between "without issue" and "without leaving issue," as to their legal effect before the revised statutes, and Ch. J. Parsons declares the rule in the same way in *Ide* v. *Ide*, (5 *Mass. R.* 500.)

Since the statute De Donis, 13 Edw. 1, and the statute of wills, a devise to a man and if he die without issue, or without leaving issue, then over, gave the first devisee an estate tail, with a contingent remainder upon the determination of the first estate by the failure of issue in tail at any period.

The act of the legislature of this state of February 22, 1786, abolished estates tail, and declared that in all cases when any person would but for the act become seised of lands in fee tail, he should be adjudged to be seised in fee simple absolute.   The effect of this was to cut off contingent remainders limited upon failure of issue after an estate tail, since they could not be limited upon a fee simple, which exhausts the entire estate.   A limitation of lands upon failure of issue of the first taker, imported an indefinite failure of issue, as has been already stated, and therefore such a limitation could not be supported as an executory devise, because it would not necessarily vest within the period beyond which such an estate could not extend at common law, viz. a life or lives in

being and twenty-one years and nine months afterwards. The result was, that since the statute of 1786 a limitation of a future contingent estate upon failure of issue was void, both as a contingent remainder and an executory devise, and the first devisee took the whole estate.

These propositions do not require authorities to sustain them. Besides the cases which have been referred to, and the older English authorities, which are cited in them, it is sufficient to mention *Jackson* v. *Bellinger*, (18 *John.* 368,) and the first two series of cases upon the Eden will, which are or ought to be familiar to every lawyer, and some of which I shall presently refer to for another purpose. (*Anderson* v. *Jackson*, 16 *John.* 332. *Lion* v. *Burtiss*, 20 *id.* 483. *Wilkes* v. *Lion*, 2 *Cowen*, 333. *See also Fosdick* v. *Cornell*, 1 *John.* 440; *Jackson* v. *Staats*, 11 *id.* 337; *Jackson* v. *Thompson*, 6 *Cowen*, 178; *Paterson* v.*Ellis*, 11 *Wend.* 259; *Cutter* v. *Doughty*, 23 *id.* 513; *Lott* v. *Wyckoff*, 2 *Comst.* 355.) The construction which was given to the words dying without issue, in wills, obviously in many cases defeated the intention of the testator, and it is doubtful if these words were often used by any uninstructed person with a sense of their true legal import and effect. Courts and judges have therefore been astute to find and prompt to seize any reason in such instruments for applying a different construction, and for holding that the testator not only intended but legally manifested his intention, that the devise over should take effect upon the death of the first taker. Since the case of *Fosdick* v. *Cornell*, (1 *John.* 440,) it must be said to have been determined in this state, that where there was a devise to two or more, and upon the death of either without issue, then to the survivor or survivors, the mention of survivors and the devise over to surviving devisees, were sufficient to show that the testator intended a definite failure of issue, that is at the death of the first devisee, and to make an exception to the rule by which the meaning of the words "dying without issue" is settled. A devise to surviving devisees

upon the death of the first devisee without issue, was there-
fore a good executory devise upon a qualified or determinable
fee.    This doctrine was applied by the supreme court to the
will of Medcef Eden, in the case of *Anderson* v. *Jackson*,
and it was affirmed by the court of errors in that case, not-
withstanding the very able opinion of Chancellor Kent to the
contrary.    (16 *John.* 382, 397.)    That learned jurist after-
wards repeatedly expressed his disapprobation of this decision,
but the courts adhered to it notwithstanding, and it has long
been too well established to be overturned, at least by this
court.    The case of *Fosdick* v. *Cornell* was approved and
followed in *Jackson* v. *Staats*, (11 *John.* 337,) and that of
*Anderson* v. *Jackson* was followed in the other Eden cases,
and was deliberately reaffirmed in the court of errors, in
*Wilkes* v. *Lion*, (2 *Cowen*, 333.)    In *Cutter* v. *Doughty*, (23
*Wend.* 513,) Judge Cowen says: "It is too late to contend that
a devise to the survivor or survivors of another upon his
death without issue is void as a limitation upon an indefinite
failure of issue.    The word survivors qualifies the technical
or primary meaning of the words dying without issue, being
considered the same as if the testator had added living at the
time of his death."

In the case before us, the devise is to the effect that if
Thomas M. Wilson the first devisee should die without leav-
ing male issue, the lands are to go the one half to his widow
during her life or widowhood, and upon her death or marriage
the real estate shall be equally divided between James,
Elizabeth and the children of Thomas.    It is contended that
this case differs from those which have been cited and is not
controlled by the Eden cases, because the devise here is not
expressed in the same terms, and is not to survivors, and
because a portion of it at least is to persons who might come
into being after the will took effect—the children of Thomas
M. Wilson.    This however is a difference in terms and not
in principle, and cannot change the construction, or the result.
The word "survivors" is not insisted upon in the cases as a

technical word, which is to change the meaning of the limitation. Any language which indicates the time when the limitation is to take effect is sufficient. The rule which affixed a certain meaning to the words "dying without issue" was a rule of property, and it was steadily adhered to as such. But it could be controlled by a contrary intention properly manifested by a testator, and all that is sought is legal evidence of such intention. In the leading case of *Fosdick* v. *Cornell* the court argued the intention of the testator from the whole will, and the use of the word survivors was only mentioned as one circumstance. In *Jackson* v. *Bellinger*, (18 *John.* 380,) the observations of Ch. J. Spencer are very pertinent to show the reason of the decisions, and in *Lion* v. *Burtiss*, (20 *John. R.* 483,) the same judge is equally explicit. He says there, that since our statute, any expression denoting an intention to limit the failure of issue to a life in being, is sufficient to repel the implication that a limitation of an estate over in the event of the first devisee dying without issue, was meant to be an estate tail.

Nor is it the fact merely that the devise over is to persons who are in fact in esse, which is the controlling circumstance. That fact is material, because it shows that the devise must have been intended to take effect upon the death of the first devisee. This is the necessary feature, and it is sufficient to discover any clear evidence of this in the will.

In the present case there is a devise upon the death of Thomas M. Wilson without male issue, of one half the lands to his widow for life or widowhood, and upon the termination of this estate the ulterior devises are to vest in possession. It is obvious that the testator contemplated the period of the death of Thomas M. Wilson as the period when the limitation over should take effect. Here is a life estate limited to a person in esse, upon the failure of issue of the first devisee, and a subsequent division of the property directed at the termination of the life estate. Without indulging in conjecture, and without going beyond the language of the will, the

inference is plain that the testator intended that the estates limited upon failure of male issue of Thomas M. Wilson should vest successively at the death of Thomas.

Another question argued was whether the devise over was of the whole or only of half the estate. The language of the codicil is, "upon her death or marriage it shall be equally divided," &c., and the heirs of Thomas M. Wilson contend that the codicil only revoked the will as to half the estate, and that Thomas M. took an absolute fee by the will, in the residue. I think, however, that the testator manifestly intended to revoke the whole devise, and to give all the property one direction when he made the codicil. He disposes of the whole of it, or intends to do so, by the language first used in the latter instrument; and the word "it" must be construed by that intention, and in reference to the property described in the prior part of the clause, and is not to be restricted to the one half given to the widow of Thomas for life. This is the construction approved by Judge Woodworth when this will was before this court, (8 *Cowen,* 86.) Although perhaps the point was not involved in the decision of that cause, the observations of the judge are pertinent and satisfactory.

I conclude, therefore, that Thomas M. Wilson by the will and codicil of his father took a defeasible fee in the whole of these lands, and that upon his death without issue, and the death of his widow, the lands passed by executory devise to James Wilson, Elizabeth Park and the children of Thomas M. Wilson in fee, unless the share of Mrs. Park had been previously conveyed by her release, which is the next question in the case.

The children of Mrs. Park deny the existence of the release which their mother is alleged to have executed. But I concur with the referee and the judge at special term, that it is sufficiently proved to have been made, and to have had all the incidents necessary to such a paper. As to the consideration, which is also disputed, the observations of Judge Lott

appear to me conclusive. It is the most reasonable and natural explanation of the transaction, that Thomas M. Wilson refused to accept the devise and pay off the charges, and in particular the debt of his father to the husband of Mrs. Park, unless she would release her contingent interest in the property to him. As to fraud or imposition in procuring this instrument, if that issue were raised, there certainly is not enough in the evidence to justify a court in setting aside such a solemn and deliberate act.

When the release was executed, Thomas M. Wilson was in possession of the lands under his father's will and codicil, by which he took a determinable fee. The execution of the release may have been a part of one transaction with the acceptance of the devise, that is, the one a condition of the other, as has been already intimated, but, in legal contemplation, one preceded the other. Mrs. Park had in the land a possibility that title might vest in her, in the contingency of the death of her brother without male issue. The right was more than an expectancy as of an heir presumptive, for it depended only upon one contingency, and that not very remote, and could not be defeated by the volition of any other person.

The referee held that such a right could not pass by a release, upon the authority of the Eden cases, especially *Jackson* v. *Waldron*, (13 *Wend.* 178.) The judge at special term considered that the decision in that case was no longer the law, since the recent case of *Miller* v. *Emans*, in the court of appeals, (19 *N. Y. R.* 384.) Judge Selden in the opinion which he delivered in the latter case remarks, that the case before him may be distinguished from *Anderson v. Jackson*, (16 *John. R.* 382.) I confess I do not well see how, in any particular in which that case was material, or why these two cases should be distinguished, since the doctrine of *Anderson* v. *Jackson* is precisely that which was assumed on all hands, as the basis for the decision in *Miller* v. *Emans*, as to the character of the estates of the parties. I am inclined to

think that the learned judge meant to say that the case before him could be distinguished from *Jackson* v. *Waldron*, (13 *Wend*. 178.)

I apprehend the nature of the right attempted to be released or assigned, is the same in *Jackson* v. *Waldron* and in *Miller* v. *Emans*. In both there was an executory devise contingent upon survivorship, and the failure of issue. There is a difference in favor of the greater certainty, or the less remoteness of the contingency in the present case, because it does not depend upon survivorship, but upon the determination of the prior fee only. There is also a difference in the three cases in respect to the conveyances. In *Jackson* v. *Waldron* the conveyance was made by two persons who were entitled to determinable fees, with an executory devise to the survivor, and made to a third person. In some of the discussions upon this case it was asserted that Winter, the assignee or grantee, was in possession, or that he should be assumed to have been so in contemplation of law, when this release was made. The prevailing opinion in the court of errors discusses the case and denies the validity of the conveyance, on the assumption that it was made to a party in possession or entitled to a present estate. If it be assumed on the contrary that the conveyance in that case was made to a stranger, it would undoubtedly make a wide difference between that case and either *Miller* v. *Emans*, or the case before us, on the present point. Judge Strong, in his opinion says, that the case of *Jackson* v. *Waldron* did not raise the question whether one of the trustees could have released to the other, because the assignment was a conveyance to a stranger, not a release to one having a prior estate. But Judge Denio, in his dissenting opinion, very forcibly urges that Joseph Eden conveyed his determinable fee by the assignment to Winter, and Medcef could as well release to Winter, his brother's grantee, as to his brother.

In the case of *Miller* v. *Emans*, a certain number of several persons seised of an estate, which Judge Selden holds

HARVARD LAW 339 LIBRARY

must be assimilated to a joint tenancy, executed a conveyance in the form of a release and quitclaim to their co-tenants, who were in actual possesion, and this release was held to pass both their present estate and their future right.

In the case at bar one of three or more persons entitled to a contingent right upon the death of Thomas M. Wilson without male issue, released to Thomas M. Wilson while in possession and entitled to the precedent estate. This is a case certainly distinguishable from that which arose under the Eden title, if Judge Strong's construction of that case be correct. It is stronger in favor of the conveyance than that case, and I am unable to see any valid distinction in principle between it and the case of *Miller* v. *Emans.* The counsel for the heirs of Mrs. Park supposes that the release of the future estate, in the Emans case, was upheld by the court of appeals because it was between joint tenants. The argument, however, misapprehends the decision. The fact of a joint seisin and possession was material to the effect of the conveyance upon the present, and not the future estate. The release was held to operate upon the present estate of the grantor " per mitter l'estate." It contained no words to bring it within the statute of uses, and as it did not transfer the possession, it would have been inoperative upon the present estate unless made to a party in possession. The grantors were in possession of the whole premises, because they were seised "per my et. per tout" as joint tenants. It did not appear that they were in the exclusive possession, or in possession otherwise than by their estate. So far as that conveyance passed a present estate, it was necessary to invoke this reasoning to support it. The validity of the conveyance depended upon the possession of the grantors, and that rested entirely upon their estate as joint tenants. But the release in the present case operated exclusively in another manner, that is, by way of enlargement. It is unnecessary to consider whether a release of one who has a future or contingent estate, would be valid if made to one who has a mere possession

of the premises without title.   Here the release is to one who
has the entire and exclusive possession and present estate.
Nor is it a question of a conveyance between two co-tenants,
who are seised of several present estates, but of a release by
one holding a future interest or right, to him who hath all
the present right both of property and possession which
could belong to any number of joint tenants.   If this deed
is otherwise sufficient, it is not open to any objection that it
cannot operate by transmutation of possession, or under the
statute of uses, because it is made to a person already in sole
and rightful possession.   Nor is there any difficulty with such
a conveyance under the statute of champerty: that is abund-
antly clear from all the cases.   The only question upon it
would have been upon the nature of the interest to be affect-
ed and its releasability.   I think this point is definitively
settled in the case of *Miller* v. *Emans,* both by the judgment
and the opinions.   I have shown that the cases cannot be
distinguished in principle on this point.   I will only add two
sentences from the opinion to show the length to which the
judges who gave them were disposed to go.   Judge Selden
said, (*p.* 394,) "I think it will be found that any and every
contingent right, however uncertain, may be released to a
party already seised of a present estate in possession ;" and
Judge Strong said, (*p.* 307,) "When there is an existing right
in one which cannot be defeated by the volition or action of
another to a future estate upon a contingency, there is some-
thing upon which a release might operate."   I add here that
I think that this case could be distinguished from *Jackson*
v. *Waldron,* and the validity of the release of Mrs. Park
upheld by the doctrines of that decision, as it may be neces-
sary for me to show in another part of the judgment.   It is
sufficient, however, at present, that it falls within *Miller* v.
*Emans.*

I concur with my associate who heard this case at special
term, that the release of Elizabeth Park was valid and effect-

ual to pass to Thomas M. Wilson all her contingent right, so that it afterwards became a vested estate in him.

The third principal question in the case arises upon the mortgage made by Thomas M. Wilson to James Wilson. On the 26th day of June, 1823, Thomas M. Wilson, in order to pay or secure the payment of the two legacies given by the testator, and charged upon the lands which he took under the will and codicil, one of seven hundred and fifty dollars to the widow, and one of a like amount to James Wilson, executed a mortgage for $1561.25 to James Wilson. This mortgage covered by its terms, twenty-four acres, part of the lands devised by the will of Thomas Wilson. At the time of the execution of the mortgage Thomas M. Wilson was seised of a determinable fee in the lands mortgaged, and that estate determined at his death. As the referee understood the law, this was his only interest or estate. But the release made by Mrs. Park being valid, Thomas M. Wilson had also the contingent interest of Elizabeth Park in the ultimate fee. That interest became vested in his heirs absolutely by the happening of the contingency upon which it depended. Thomas M. Wilson died on the 1st of September, 1824, and then of course his estate under his father's will determined. His children took as his heirs and not as purchasers, the fee of one third of the lands to which Mrs. Park would have been entitled but for her release. That interest in Thomas M. Wilson, after the release, was devisable and descendible. It must have been descendible, or the release would have been wholly ineffectual, and if descendible it was, I take it, devisable. In the opinion of Senator Tracy in *Jackson* v. *Waldron*, and by the authorities which he cites, it is shown that descendible and devisable are convertible terms in respect to contingent interests. The interest of Medcef Eden was not descendible, because his death would determine the very possibility which would direct the estate to him, and it would be absurd that he should be allowed to transmit through his death what his death put an end to. But the devise in the

codicil of Thomas Wilson, sen., is otherwise in this respect. It is, I take it, beyond doubt, and not disputed by any of these parties, that the devise over upon the death of Thomas M. Wilson without male issue was of a fee. If the contingency happened and the estate vested, it became a fee, and before the happening of the contingency the expectant interest of the devisee, in respect to its qualities of transmission and transfer, assimilated a contingent remainder.

There is obviously a wide difference between the interest devised to Elizabeth Park by this codicil, and that which was considered in the court of errors in *Jackson* v. *Waldron.* Here the vesting of an estate in fee depended upon nothing but the contingency of the death of Thomas M. Wilson without male issue, and the persons in whom it was to vest were designated and ascertained. In the Eden will, on the contrary, the person who was to take was not ascertainable until the contingency happened. In other words, it depended upon the double contingency of the death of one of the brothers without issue, and the survivorship of the other. It was upon *this very point* that Senator Tracy held that the interest of Medcef Eden was a naked possibility not coupled with an interest. The whole point really decided in *Jackson* v. *Waldron* was that a devise to two, and if either died without issue, his share to the survivor, gave to each only a bare possibility in the lands devised to the other during his life, and that such a right was not an interest, and was not assignable nor releasable. The cases and text writers cited both by the Chancellor and Senator Tracy make a distinction between such a right, and those created by devises upon a like contingency to a definite and certain person. It is agreed that the latter are coupled with an interest, and it is well settled that they are devisable. This was determined in the case of *Roe* v. *Jones*, (1 *H. Bl.* 30 ; *S. C. in error in B. R.* 3 *T. R.* 88.) I am very clear that the right or interest of Elizabeth Park in these lands was devisable. We have held that it was releasable, and passed to Thomas M. Wilson by

Wilson *v.* Wilson.

the release proved in this case, before he made the mortgage now in question. And it will be seen that as it was a possibility coupled with an interest, as being created by a devise to a designated person, and upon a single contingency not remote, or dependent upon the volition of another, the estate of Mrs. Park was a different one from that of Medcef Eden, and her release was valid under the distinction by which his was declared void.

But the question now is, whether this contingent interest or possibility coupled with an interest, could be bound or charged by a mortgage, that is, substantially whether it was assignable, and this is a question not decided in any of the cases to which I have referred.

Senator Tracy asserts it to be the doctrine of the older cases that a contingent interest, though devisable, is not assignable, and that the more recent decisions do not trench upon that rule. The remark was not necessary in the decision of the cause, and I think, with deference, was hardly correct. The opinion or impression may no doubt be traced in a great degree to *Lampet's case,* (10 *Rep.* 46.) Lord Coke does say it was resolved in that case that an executory interest in a term, which was devised for life to one and then for the residue to another, was not assignable to a stranger. But what was adjudged in the case was that this interest in the latter was releasable to the tenant for life. With reference to the legal propositions beyond the point decided in the case, it will be remembered that executory devises had then but just been introduced into the law, and they were regarded by the older lawyers with a strictness which has since been relaxed. Without adverting to the whole series of decisions, it will be sufficient to cite a few of the more recent. In the case of *Jones* v. *Roe,* (3 *T. R.* 88, 93,) Lord Kenyon seems to have considered that it had come to be settled by degrees that such interests were descendible, releasable and assignable, and that the only question remaining was if they were devisable; which he expresses a determination to put at rest. So the

other judges, who gave their opinions seriatim, thought that the case turned upon the statute of wills, and upon the question whether the language of the statute was broad enough to include the interest or estate in question. I think the modern authorities and the best text books will sustain the proposition that devisable and assignable are convertible terms in reference to contingent interests, and I see no reason why they should not be. In order to show that such contingent rights were devisable, it was only necessary to establish that they were interests and not merely possibilities. But when this was established it certainly proved that the devisee had something in the land; and if he had an actual, definite, although contingent interest, he could convey it by the same rule by which he could devise it, unless he was forbidden to do so by the statutes of champerty. I have no doubt that such a case is entirely excluded from the provision of all, even the older and more stringent statutes of champerty. Waiving the question whether a mortgage is forbidden by these statutes, the sale of a contingent interest to arise after a determinable fee, is not such a sale of a pretended right or title as the statutes of champerty aim to prevent. Such pretended titles are where one person claims lands of which another is in possession holding adversely. It is plain that there was no such adverse possession here. I perceive no difference between vested and contingent remainders or executory devises, in respect to champerty. In either case there is no possession by the remainderman or executory devisee, and in neither is there any possession adverse to him. In *Grant* v. *Townsend*, (2 *Hill*, 554,) it was held that a remainderman could convey while the tenant for life was in possession. That was a vested remainder, but the principle would have been the same if it had been contingent.

I am of the opinion that Mrs. Park could have made a valid mortgage upon her interest, and that her assignee, Thomas M. Wilson, was equally competent. It follows that the mortgage which was made by the latter was a lien, not

Wilson *v.* Wilson.

only on his own estate under the codicil in all the lands described, which determined at his death, but also upon the fee in one third of those lands, which his children took as heirs to their father through the release of Mrs. Park. This. being so, it seems to me that there is no occasion nor opportunity to invoke the law of estoppel against the plaintiff as assignor of this mortgage. The doctrine upon which his liability for the mortgage was made out in the court below, rested upon his having assigned as valid an instrument which had become wholly invalid and ineffectual by the death of the mortgagor, and which by its terms covered land of which the assignor had become the owner. But that was not the fact. James Wilson still held this mortgage against the original share or estate of Elizabeth Park. It was a valid lien upon the fee to that extent, and I see nothing by which James Wilson can be said to have guarantied that it was a lien upon any thing more, or to be estopped from denying that it was not. If James Wilson had been compelled to pay this mortgage, I apprehend he could have come round either in this action, or in a proper suit, upon the heirs of Thomas M. Wilson for compensation to the extent of the value of the share of Elizabeth Park, because they took this as heirs to their father, and not as purchasers or as heirs to Thomas Wilson, sen. But, in the present aspect of the case, I think the mortgage in question should be paid out of the share devised to Elizabeth Park, and now held by the daughters of Thomas M. Wilson, by virtue of Mrs. Park's release of the land described in the mortgage. If the proceeds of this should prove insufficient for the purpose, the holder of the mortgage should be at liberty to apply for any proper relief against the heirs of Thomas M. Wilson, who are liable for the debt of their father, not only to the extent of the land expressly mortgaged, but to the value of the interest in all the land devised which passed by the release of Elizabeth Park, and comes to them as heirs of Thomas M. Wilson.

The conclusion at which I have thus arrived disposes of

the questions which were discussed as to the equities between James Wilson and Thomas M. Wilson's children.

There was another point raised in behalf of the defendants, Mary L. Wilson and others, that they should be repaid the expenditures made by their father in permanent improvements. It is sufficient to say that I do not find in the papers any evidence of these improvements, and we are not called upon to lay down any rule with respect to them.

My opinion therefore is, that there should be a modification of the judgment in relation to the mortgage of Thomas M. Wilson as I have already indicated, and that in other respects the judgment should be affirmed. But my brethren do not concur in this view of the effect of the assignment by James Wilson. They consider him bound to make the mortgage good out of his own share of this property, in consequence of his assignment, upon a similar principle to that which was acted upon by the referee, although applied to a different state of facts. In their view of the case, James Wilson, having assigned without qualification a mortgage which described the premises generally, or the estate of the mortgagor as if he owned the whole, is not at liberty to assert that he, the assignor, is the owner of a share of the lands not subject to the mortgage. I am not able, as I have said, to concur in this view of this part of the case, or in the consequences which are deduced from it. Upon the other points presented by the case the court are unanimous, and it being the opinion of a majority of the court that this portion of the judgment is also correct, the whole judgment is affirmed.

The costs of all the parties on the appeal will be paid out of the fund.

[ORANGE GENERAL TERM, September 10, 1860. *Lott, Emott* and *Brown,* Justices.]