VANDERVEER CROSSINGS v. RAPALJE et al.

(Supreme Court, Appellate Division, Second Department.    June 4, 1909.)

1. QUIETING TITLE (§ 23*) — RIGHT OF ACTION — DETERMINATION OF ADVERSE CLAIMS—TITLE AND POSSESSION OF PLAINTIFF.

The statutory action to determine an adverse claim to realty will not lie, unless plaintiff shows possession at the time of the commencement of the action under a claim or color of title to the fee, as required by Code Civ. Proc. §§ 1638, 1639, and a right to an easement is not enough.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 55; Dec. Dig. § 23.*]

2. QUIETING TITLE (§ 23*) — RIGHT OF ACTION — DETERMINATION OF ADVERSE CLAIMS—POSSESSION BY PLAINTIFF.

One who dredges a tidal creek many years after the disappearance of a millpond, and puts the soil on the margin to reclaim it, the land formerly under water being capable of actual possession acquires neither "actual" nor "constructive" possession, giving him the right to maintain the statutory action to determine adverse claims to realty.

[Ed. Note.—For other cases, see Quieting Title, Dec. Dig. § 23.*]

3. QUIETING TITLE (§ 23*) — RIGHT OF ACTION — DETERMINATION OF ADVERSE CLAIMS—POSSESSION OF PLAINTIFF—"CONSTRUCTIVE POSSESSION."

The "constructive possession," which will sustain the statutory action to determine adverse claims to realty, is the possession which follows the legal title.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 55; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 2, pp. 1474, 1475.]

Appeal from Special Term, Kings County.

Action by Vanderveer Crossings against Henry W. Rapalje and others. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and BURR, JJ.

Charles C. Suffren, for appellants.

Charles C. Clark, for respondent.

BURR, J.  This action was brought to compel the determination of a claim to real property under chapter 14, tit. 1, art. 5, of the Code of Civil Procedure.  Plaintiff alleges that land which defendant unjustly claims lies between the center line of Vanderveer's millpond, or Fresh creek, and the easterly line thereof.  Fresh creek at this point was a tidal creek.  It rose some distance north of the premises in question, and emptied into Jamaica Bay about a mile to the south.  At flood tide the salt water from the bay backed up until the creek was five or six feet deep.  At low tide it consisted of a narrow stream of fresh water from six inches to a foot deep.  Very many years ago the owners of the upland on the west of the creek built a dam across it, with floodgates which opened inward by the action of the incoming tide.  When the tide turned the gates closed, impounding the water, which was then drawn off as needed through a sluiceway to turn

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the wheel of a mill on the west bank of the stream. The effect of this was to cause the stream to overflow its well-defined banks, extending over the adjoining upland upon the easterly and westerly side. It is the easterly bank of the creek, as thus made to overflow its natural boundaries, and the millpond created by such overflow, which plaintiff claims as the easterly boundary of its land.

To maintain this action plaintiff must show, first, possession of the land in dispute, and that such possession is under claim and color of title, and not that of a mere trespasser or licensee. Bohn v. Hatch, 133 N. Y. 64, 30 N. E. 659. Such title must be either to the fee of the land, or to an estate for life, or for a term of years not less than 10. Code Civ. Proc. §§ 1638, 1639. A right to an easement is not enough. Consolidated Ice Co. v. Mayor, 166 N. Y. 92, 59 N. E. 713. This action was commenced in May, 1907. The first deed in plaintiff's chain of title, which by metes and bounds includes in its description the land lying between the center of Fresh creek and the millpond and the easterly boundary of the same, was made in October, 1905, by one John Vanderveer to James E. Harrity. Several prior conveyances were introduced in evidence, as well as several wills; but none of these trace plaintiff's title back to the sovereign. It is admitted that this cannot be done. The deeds prior to the Harrity deed, which were admitted in evidence, bound the property thereby conveyed "easterly by the Fresh Kill," or describe it as the "gristmill property adjoining the Fresh Kill or creek aforesaid." Plaintiff's claim of title must therefore be under the deed made in 1905. As that deed purports to convey the fee, whether such title were good or bad, if plaintiff also prove the necessary possession, that would probably be sufficient to call on defendant to show his title, and if he failed to do so, or to show a better title than that of the plaintiff, the latter would be entitled to judgment. Ford v. Belmont, 69 N. Y. 567; Merritt v. Smith, 50 App. Div. 349, 63 N. Y. Supp. 1068; Stackhouse v. Stotenbur, 22 App. Div. 312, 47 N. Y. Supp. 940.

But the possession referred to must be in plaintiff at the time of the commencement of the action (Code Civ. Proc. § 1639), and must have been continuously maintained by him, or those from whom he claims his title, for one year preceding (Id.). The action is purely statutory, and will not lie unless the conditions prescribed in the statute are fulfilled. Lewis v. Howe, 174 N. Y. 340, 66 N. E. 975, 1101. At the time of the commencement of the action, and for some time prior thereto, the dam had been broken down and the water of the millpond had flowed away. All that remained was the water in the creek. The land which was formerly under water was not inclosed, nor was it "usually cultivated or improved"; and the court has so found. The only act of dominion which plaintiff has exercised over it was that after the waters of the pond had flowed away he dredged in the center of the creek and put the soil back on the margin to reclaim it. This is neither the "actual possession" which was formerly required (Churchill v. Onderdonk, 59 N. Y. 134; Boylston v. Wheeler, 61 N. Y. 521), and which in the absence of a good title might be sufficient, nor the "constructive possession" which, since the amendment

of 1891, is sufficient (Clason v. Stewart, 23 Misc. Rep. 177, 51 N. Y. Supp. 1100).

Constructive possession is "the possession in law which follows in the wake of the title." Churchill v. Onderdonk, supra. It may be claimed that in the case of land under water there can be no actual physical occupation, and that in such case the constructive possession which follows the legal title is sufficient. Whitman v. City of New York, 85 App. Div. 468. 83 N. Y. Supp. 465; Hoyt v. Forrest, 56 Misc. Rep. 147, 106 N. Y. Supp. 1083. The greater portion of the land in dispute was not under water at the time of the commencement of the action, and had not been for some time. It was entirely capable of. "actual possession." The doctrine of "constructive possession" will not aid the plaintiff; for it has not established the legal title which must precede such possession. Having neither actual nor constructive possession at the time of the commencement of the action, it must fail. Wiechers v. McCormick, 122 App. Div. 860, 107 N. Y. Supp. 835.

The judgment appealed from must be reversed, and a new trial granted; costs to abide the final award of costs.

WOODWARD, JENKS, and RICH, JJ., concur.

GAYNOR, J. (concurring). The title deeds of the parties show that the land of the plaintiff's predecessors ran to Fresh Kill on the east, and that the lands of the defendants ran to the said kill on the west, the said kill being thus the boundary line between them. The said kill is a tidewater creek running into Jamaica Bay. About 200 years ago the plaintiff's remote predecessor in title put a dam across the said kill with automatic gates in it, so that when the tide went up the kill and overflowed its banks on both sides, and turned to go out, the said gates closed, and kept the water from running out. In that way a permanent pond was formed, overflowing the said kill on both sides. Its waters were used to run a mill of the plaintiff's predecessors in title, which was located near the dam. In late years the mill went out of use, the dam fell down and the pond disappeared.

Such overflow of the land of the defendants' predecessors by the plaintiff's predecessors does not show an adverse possession thereof under claim of title in the latter, which of course would have long since ripened into title, but only an easement, a claim of user, which may have ripened into a right by prescription, but not into title to the land, which is a very different thing. The right acquired by prescription by a user is measured by the user itself. Hammond v. Zehner, 21 N. Y. 118; Washb. on Real Prop. bk. 2, c. 1, § 3, subd. 19. The user being abandoned, and the title being in the defendants, the plaintiff has no case.