Kiowa Realty Company, Plaintiff, *v.* Martin M. Molenaor et al., Defendants.

(Supreme Court, New York Special Term, February, 1917.)

Title — when claim to, is untenable — rules — Code Civ. Pro. § 1638 — Real Property Law, § 260.

The rule that it is an essential quality of an estate tail that the creator thereof shall have had in contemplation the unlimited descent of the estate to the chain of heirs of the grantee requires the use of the words " heirs of the body " of the grantee, except

in wills where a more lax interpretation leading to an implication of those words is permissible.

By a will probated in 1812, testator devised to his eldest son, "the legitimate heirs of his body or to the nearest heirs of his body," five city lots, four of which are and always have been unoccupied and unfenced and one upon which there is and has been for some years a shack or hut in which some of the defendants reside. Coupled with a devise to each of two other sons, "the legitimate heirs of his body or to his nearest lawful heirs," was a legacy, and the will declared it to be testator's will and desire that said younger sons should be liberally educated out of the income of his estate exclusive of the legacies to them. To his daughter testator devised certain lots "under the same restriction and provisos with my three sons already named, that is, all her legacy shall descend to the heirs of her body, etc." In an action brought under section 1638 of the Code of Civil Procedure to compel the determination of a claim adverse to plaintiff in respect to the five lots, it was stipulated that it held a full legal paper title thereto passing through the eldest son of testator and its claim was that under his will said son became seized of a fee simple in property which includes the lots in controversy. Defendants' claim was that the eldest son of testator took, if anything, only a life interest and that the remainder or fee vested in his lawful heir through whom the defendant claims title. *Held*, that the testator devised to his eldest son an estate tail which the statute of February 23, 1786, converted into a fee simple and the title of plaintiff to the lots in question is good, and that it is entitled to maintain the action; as its constructive possession of the property, evidenced by its clear paper title thereto, is sufficient under the statute.

A contention that the deed under which plaintiff claims title is void under section 260 of the Real Property Law which provides that a grant of real property is void if at the time the said "property is in the actual possession of a person claiming under a title adverse to that of the grantor," based upon defendants' occupation of a shack on one of the lots coupled with the filing of the maps in the office of the register of the county in which they lay claim to the title of all the lots, is untenable.

ACTION under section 1638 of the Code of Civil Procedure to compel the determination of a claim adverse to that of plaintiff in respect to certain real estate.

Eisman, Levy, Corn & Lewine, for plaintiff.

M. M. Molenaor in person, for defendant.

BIJUR, J.  This action is brought by plaintiff under section 1638 of the Code of Civil Procedure "to compel the determination of a claim adverse to that of the plaintiff in respect to certain real estate." The property is situated at the southeast corner of Broadway and Hillside avenue.  It comprises four lots, approximately 25 to 150 feet each, facing Broadway, and numbered for the sake of convenience at this trial 1, 2, 3 and 4, proceeding from south to north.  Adjoining it on the north is a lot approximately 100 by 150, which extends from the northern line of this property to the southern line of Hillside avenue.  The last mentioned lot is for convenience denominated No. 5. The four lots in controversy are and have always been unoccupied and unfenced.  Upon lot No. 5 there is and has been for some years a shack or hut resided in by some of the defendants.  The controversy involves primarily the construction of the will of William Molenaor, which was admitted to probate in this county on May 5, 1812.  Plaintiff claims, and it is stipulated that it held, a full legal paper title passing through David William Molenaor, the eldest son of the testator, and plaintiff's claim is that under the will said David William Molenaor became seized· of a fee simple in property which includes the lots in controversy.  Defendants, on the other hand, claim that David William Molenaor took, if anything, only a life interest, and that the remainder or fee vested in his lawful heir, Martin Montrose Molenaor, through whom the defendants claim title.  Defendants have filed maps covering the lots in question and have issued statements to the effect that they are

seized in fee simple thereof. The devise of the testator, William Molenaor, reads as follows: " To my eldest son, David William Molenaor, the legitimate heirs of his body or to the nearest heirs of his body." Plaintiff's claim is that at the time of the probate of this will, this devise, in the form of a devise of an estate tail, following the rule in *Shelley's Case,* 1 Coke, 104, and pursuant to the statutes of this state of July 12, 1782, and February 23, 1786, vested an estate in fee simple in David William Molenaor. Defendants, as I understand it, do not contest the general proposition of law, but hold it inapplicable because, as they construe the will, no estate was devised to David William Molenaor, but the devise was only " to the legitimate heirs of his body, etc." From the standpoint of grammar, they urge that the language should be construed as in the phrase " John Jones, his mark," and that the devise should be read as one to the legitimate heirs of the body of David William Molenaor. To this extraordinary construction I cannot give my assent. Altogether, apart from the violence which I think it does to the rule of grammatical construction prevalent at the time of the execution and probate of this will, the last will itself is replete with persuasive suggestions of the meaning of the testator to the contrary. The bequest to the second son is " to my second son, William Molenaor, to the legitimate heirs of his body or to his nearest lawful heirs," and to the third son, " to my third son, DeWitt Clinton Molenaor, the legitimate heirs of his body or to the nearest lawful heirs." To the devise to both the second and third sons, respectively, is added a bequest of $1,250, and toward the end of the will is the suggestive phrase " 'tis also my will and desire that my two youngest sons, William Mole-

naor and DeWitt Clinton Molenaor, be liberally edu-
cated out (of the) income of my estate, exclusive of
*their legacies."* The testator was evidently under
the impression that he had given to these two sons
something substantial in the form of what he calls
their "legacies." Moreover, in the devise to his
daughter of certain lots he says that they are given
"under the same restriction and provisos *with my
three sons already named,* that is, all *her legacy* shall
descend to the heirs of her body, etc." Manifestly
the testator felt that he had dealt with his sons in the
main as he had with his daughter, namely, made a
devise to them, and with the intent that it should
descend to the heirs of their body. The next point
urged by defendants in support of their contention
that the devise to David William Molenaor was not
a fee tail calls for more extended consideration. It is,
as I understand it, based mainly on the claim that
what defendants call the substituted gift indicates
that the testator did not intend an estate tail. By the
phrase substituted gift I understand defendants to
refer to the words "or to the nearest heirs of his
body." I may say at once that were I compelled
unaided to interpret this phrase I should experience
considerable difficulty. The language referring to the
devises to the other sons lends itself more readily to
easy comprehension. In the case of William it reads
"or to his nearest lawful heirs," and in the case of
DeWitt almost the same, "or to the nearest lawful
heirs." But whatever doubt might be entertained con-
cerning the interpretation of these stilted phrases is
resolved in the reference thereto contained in the
devise to the daughter, which is described as being
"under the same restriction and provisos with my
three sons already named, that is, all her legacy shall
descend to the heirs of her body, and in case of a

deficiency of the same it shall descend to her brothers or their heirs.'' It becomes necessary to examine the defendants' contentions in the light of this explanation by the testator of his meaning. They urge in substance (as I construe their claim) that it is an essential quality of an estate tail that the creator thereof shall have had in contemplation the unlimited descent of the estate to the chain of heirs of the grantee. Connected with this rule is the requirement of the use of the words *'' heirs of the body ''* of the grantee, except in wills where a more lax interpretation leading to an implication of those words was permissible. Examples are to be found among the many cases which discuss the interpretation to be placed upon words of a devise which provide for a disposition of the remainder in case of a '' failure of issue.'' Thus prior to the Revised Statutes of 1830 (1 R. S. 724, § 22) '' a limitation over of real estate, in the event of the death of the previous taker without issue, or without leaving issue meant an *indefinite* failure of issue, and not a failure of issue at the time of the death of the first taker.'' *Miller* v. *Macomb,* 26 Wend. 229, 232; *Wilson* v. *Wilson,* 32 Barb, 328, 332. Such limitation, therefore (regardless of whether it was valid or not), since it was to take effect only upon the ultimate extinction of the line of inheritance of the body of the first taker, indicated no intention on the part of the grantor to limit the inheritability of the estate or '' to divert the legal course of descent '' (*Brant* v. *Gelston,* 2 Johns. Cas. 384, 387) or to interfere with the implication of '' issue in an indefinite succession '' (*Anderson* v. *Jackson,* 16 Johns. 382, 400), and did not reflect upon its quality as an estate tail. On the other hand, a limitation over to take effect upon a *definite* failure of issue, namely, upon the death of the first taker without issue, has been held to imply

an absence of the very factor upon which the existence of the estate tail depends. *Lytle* v. *Beveridge,* 58 N. Y. 592, 598–602; *Lion* v. *Burtiss,* 20 Johns. 483, 489. Thus a limitation over dependent upon express survivorship or an equivalent expression has been seized upon as an indication that a definite failure of issue is intended and the quality of the estate as one in tail thereby destroyed (*Anderson* v. *Jackson,* 16 Johns. 382), although in that case the strong dissenting opinion of Chancellor Kent, in which a large minority of the court concurred, is regarded by many as the expression of the more logical and correct view. See note e, 4 Kent Comm. (14th ed.) 279; *Fosdick* v. *Cornell,* 1 Johns. 440; *Lion* v. *Burtiss,* 20 id. 483, 489; *Wilkes* v. *Lion,* 2 Cow. 333; *Lott* v. *Wykoff,* 2 N. Y. 355; *Wilson* v. *Wilson,* 32 Barb. 328, 332–336. The nicety with which the courts endeavored to spell out the intention of the testator is illustrated in a salient way by one of the cases cited by defendants in support of the apparent claim that language similar to that employed in the will under discussion was held not to create an estate tail. *Doe* v. *Laming,* 2 Burr. 1100. It is pointed out, however, by Lord Mansfield that this was an estate in gavel-kind (in the county of Kent) which would descend in the first instance at least only to the heirs male, and that consequently the use (among other elements) of the phrase, " to the heirs of her body lawfully begotten or to be begotten, as well *females* as males," indicated plainly that it was intended that these descendants should take not by way of limitation or inheritance, but as purchasers. But defendants' appeal to this qualifying rule and its limitations seems to me to be not determinative, because the limitation over in the will in the instant case is expressly to the brothers or *their heirs,* from which phraseology — assuming defendants' method of

reasoning to be followed — I am not only unable to draw the conclusion that the testator intended the limitation to take effect upon the death of the tenant in tail, but, on the contrary, I infer that he had in mind an indefinite failure of the issue of the tenant and attempted to provide for a limitation over either to a person in being if he should live so long or, on the failure of that improbable contingency, to that person's heirs, however remote. See *Brant* v. *Gelston,* 2 Johns. Cas. 384, 395; *Jackson* v. *Van Zandt,* 12 Johns. 169; *Seaman* v. *Harvey,* 16 Hun, 71. In my opinion, therefore, the testator devised to David William Molenaor an estate tail which the statute of 1786 converted into a fee simple, and the title of plaintiff to the tract in question derived from said David William Molenaor is good. Although it is not involved in the decision of the instant controversy, it may not be inept to note that this decision no doubt leads to the conclusion that the remainders expectant or contingent to the brothers and their heirs are thereby rendered invalid, since upon the estate tail being regarded as one in fee they could only be supported, if at all, as executory devises which would not necessarily vest within the prescribed period. *Wilson* v. *Wilson, supra,* 332. This consideration, however, is of no importance from a practical viewpoint, since David left issue. Defendants also urge that plaintiff is not entitled to maintain the suit, because section 1638 of the Code provides that it may be brought only by one who has " been for one year in possession of real property." I am not clear whether defendants maintain that this language is equivalent to that of this section as it stood prior to 1891, at which time the phraseology used was " *actual* possession," but at all events it is well settled that the amendment omitting the word " actual " is significant of an important

change in the requirement as to possession. In other words, it is held, under the present reading of the section, that *actual* possession is no longer necessary. The lots being unoccupied and unfenced, constructive possession, evidenced by plaintiff's clear paper title to the land, is sufficient. *Neale* v. *Walter,* 128 App. Div. 827; *Whitman* v. *City of New York,* 85 id. 468 (1903), citing *Gage* v. *Kaufman,* 133 U. S. 471. See, also, *Mitchell* v. *Einstein,* 42 Misc. Rep. 358; *Vanderveer Crossings* v. *Rapalje,* 133 App. Div. 203, 206. Finally defendants contended that the deed under which plaintiff claims title is void under section 260 of the Real Property Law, frequently called " The Champerty Act," which provides that: A grant of real property is absolutely void * * * if at the time * * * such property is in the actual possession of a person claiming under a title adverse to that of the grantor." This claim is based, so far as I understand it, upon defendants' occupation of the shack to which I have referred hereinabove as standing on lot No. 5, coupled perhaps with the filing of the maps in the office of the register of this county, in which they lay claim to the title to the whole of the plot. So far as the filing of the map is concerned, I do not see how it establishes actual possession, apart from the adjudication to the contrary in *Archibald* v. *New York C. & H. R. R. R. Co.,* 157 N. Y. 574. So far as actual possession by defendants of the property in controversy is concerned, I find no merit in defendants' contention that the occupation of a shack on one or more city lots which we have called No. 5 can be regarded as actual or even constructive possession of adjoining city lots which have no relation in appearance or occupation with the property actually occupied. Although the citation of authorities on this point seems to me quite unnecessary, *Thompson* v. *Burhans,* 79 N. Y. 93, illustrates

the point. Considerable time was taken up at the trial by proof in regard to a small fence at the northwest corner of lot No. 4. Plaintiff has established to my satisfaction that the fence was built by a party to whom its predecessor in title had granted a license or lease to maintain a gasoline station at that point. But the question seems to me to be quite immaterial. If the existence of this fence is merely casual or accidental, it has no bearing upon the question of possession or occupancy. If it is to be given any significance, it is clear that it was erected by the licensee or lessor of plaintiff's predecessor, and that such occupation or possession as it may represent would inure to plaintiff's benefit.

Judgment for plaintiff, with costs.